**Noel Roque RODRIGUEZ, Plaintiff,**

v.

**CASA SALSA RESTAURANT,
et al., Defendants.**

No. 00–2418 JP.

United States District Court,
D. Puerto Rico.

April 7, 2003.

**414**

Jorge A. Fernández Reboredo, Esq., San Juan, for Plaintiff.

David Efrón, Esq., Gerardo Casanova Tirado, Esq., Río Piedras, Commonwealth Department of Justice, Federal Litigation Division, José R. Cintrón Rodríguez, Esq., San Juan, for Defendants.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION AND BACKGROUND

Plaintiff filed the instant action on November 3, 2000, alleging copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101—1101, trademark infringement under the Lanham Act, 15 U.S.C. §§ 1050–1150, violations of Article VI of the Berne Convention for Protection of Literary and Artistic Works of September 9, 1886, as amended, unjust enrichment, vicarious and contributory infringement and related damages pursuant to Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5102 and local Intellectual Property Act, 31 P.R. Laws Ann. § 1401.

The Court dismissed the claims in the instant action against Co–Defendants the Commonwealth of Puerto Rico, the Puerto Rico Tourism Company, and Puerto Rico Tourism Company officials José A. Corujo, Teresa Caballero, Iván Delgado Nieves, based on Eleventh Amendment Immunity (docket Nos. 44 and 45). The Court also dismissed Plaintiff's claims against Ajili Mójili Restaurant, Rafael Muñiz, Ricky Martin and Publimagen Inc. based on Plaintiff's failure to state a claim against them (docket Nos. 44 and 45). Thus, the remaining Co–Defendants are Casa Salsa Restaurant, represented by Manuel Benítez, Promotores Latinos Corporation, represented by José Benítez and Rafael Benítez, and Luis Sierra Suárez, a partner of the Casa Salsa restaurant.

■ The Court now **DISMISSES** the instant complaint in its entirety based on Plaintiff's failure to state a claim under federal law for copyright or trademark infringement. The Court recognizes that no party has filed a motion to dismiss the copyright claims in this case. However, sua sponte dismissal for failure to state a claim is warranted where "it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile." *See Chute v. Walker*, 281 F.3d 314, 319 (1st Cir.2002) *citing Gonzalez–Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir.2001). In the instant case, the material facts are crystal clear and no amend-

ment of the complaint could possibly serve to alter the Court's disposition of Plaintiff's claims.

In addition, the parties have filed motions with the Court that contain ample discussion of the issues at hand which, while not constituting a formal motion to dismiss or reply thereto, sufficiently voice the parties' concerns on the instant issue. For example, as part of his "Reply in Opposition to Motion to Dismiss" (docket No. 35A), former Co–Defendant Rafael Muñiz alleges that Plaintiff failed to state a claim for copyright infringement because his restaurant idea was too general and thus not protected by copyright law, which is the precise issue analyzed in the instant opinion. Plaintiff, in his "Motion in Opposition to Co–Defendant Enrique Martin Morales' and Publimagen de Asesores, Inc.'s Motion to Dismiss" (docket No. 34) states Plaintiff's position on this precise issue, alleging that his restaurant qualifies as an "original work" and is thus subject to copyright protection. While these arguments did not form the basis for the Court's decision to dismiss the various former Co–Defendants, it is clear that Plaintiff has had ample opportunity to respond to the issues contained in the instant opinion. Finally, in response to the Court's request for additional information about the claim, Plaintiff filed a memorandum that extensively explains the similarities between the restaurants and why, in Plaintiff's opinion, his idea deserves copyright protection (docket No. 66).

Accordingly, the Court finds that a sua sponte dismissal of the instant case for failure to state a claim is proper. However, the Court notes that Plaintiff is free to file a motion for reconsideration should he find that the Court's disposition is in error.

## II. FACTUAL ALLEGATIONS

In March 1997 Plaintiff created a business plan titled "Market Study for a Hypertheme Restaurant in San Juan" ("the Plan"). The Plan is a marketing analysis created as part of Plaintiff's degree requirement. Plaintiff planned to open a theme restaurant called "Rumba Caribbean Bar & Cuisine," which was intended to capture Puerto Rican traditions and folklore through food, drinks, salsa music and dance. Plaintiff obtained an official "Certificate of Trademark Registration" dated August 20, 1998 and August 21, 1998 for his restaurant plan. On April 25, 2000, Plaintiff registered the Plan in the Intellectual Property Register of the Department of State of Puerto Rico, and obtained a copyright registration certificate for the Plan on May 2, 1997.

Plaintiff then contacted former Co–Defendant the Puerto Rico Tourism Company, seeking support for the theme restaurant. Plaintiff claims that he presented the Plan to the Tourism Company during a meeting in November of 1997. Former Co–Defendant the Tourism Company told Plaintiff that it would submit a copy of his proposal to former Co–Defendant Teresa Caballero and the Tourism Company's Marketing Department for their review and would then contact him. Plaintiff alleges that former Co–Defendant Delgado Nieves told him after the meeting that, while the Tourism Company would not make a monetary contribution to the Plan, it was willing to endorse his restaurant and include "Rumba" in its international tourism campaigns.

Plaintiff waited over a year for an endorsement. According to Plaintiff, this delay prevented him from opening the restaurant because potential investors in the Plan conditioned their monetary contributions and support on Plaintiff's receipt of the Tourism Company's endorsement.

On December 16, 1998, Co–Defendant Casa Salsa restaurant opened in South

Beach, Florida, with the support of the Puerto Rico Tourism Company. According to Plaintiff, the theme of Casa Salsa Restaurant was almost identical to the theme described in his Plan.

On December 17, 1998, the Tourism Company endorsed Plaintiff's restaurant plan. However, from the facts contained in the complaint, it appears that Plaintiff never opened the restaurant.

Plaintiff alleges that former Co–Defendant the Tourism Company allowed current Co–Defendants Manuel Benítez, Rafael Benítez, José Benítez and Luis Sierra Suárez, along with former Co–Defendants Angelo Medina, Enrique Martin Morales, Rafael Muñiz, and Pedro Muñiz, to view his Plan. Plaintiff further alleges that these Co–Defendants knowingly and willfully copied his Plan in its entirety, and used it to develop Casa Salsa restaurant, thereby infringing upon his copyright.

## III. DISCUSSION

### A. Copyright Infringement

■ In order to prevail on a claim of copyright infringement, a party must show two elements: (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer. *See Feist Publications, Inc. v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991); *Matthews v. Freedman*, 157 F.3d 25, 26–27 (1st Cir. 1998). The validity of Plaintiff's copyright and his ownership of the copyright are not in dispute. Therefore, the Court will analyze the second element of the copyright infringement claim—the copying of the work.

■ The First Circuit has developed a two-part test to determine whether copyright infringement has occurred. First, the Court must determine whether the work has been copied. In order to perform this analysis, the Court must "dissect" the work to identify which aspects of the work are protected by copyright law. *See Concrete Machinery Co. Inc., v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 608–09 (1st Cir.1988). Second, the Court must apply the "ordinary observer test" to determine whether there is substantial similarity between the original and copied works, considering only those aspects which it has isolated as protected by law. *See id.*

■ It is well-established that copyright law does not protect ideas themselves; it only protects the original expression of ideas. *See Feist*, 499 U.S. at 345–51, 111 S.Ct. at 1287–91; *Matthews*, 157 F.3d at 26. "The underlying idea, even if original, cannot be removed from the public realm." *Matthews*, 157 F.3d at 26. When there is only one way to express an idea, that idea is said to "merge" with the expression of the idea and thus prohibit copyright protections. *See Concrete Machinery*, 843 F.2d at 606. Even when the idea and the expression are not inseparable, there may only be a limited number of ways to express the idea. *See id.* In these situations,

> the burden of proof is heavy on the plaintiff who may have to show 'near identity' between the works at issue. This showing is necessary because, as ideas and expression merge, fewer and fewer aspects of a work embody a unique and creative expression of the idea; a copyright holder must then prove substantial similarity to those few aspects of the work that are expressions not required by the idea. *Id.* at 606–07 (internal citations omitted).

Courts must also consider the degree of originality of the subject matter. Expressions of those subjects that are common and everyday often necessarily appear

similar to other expressions of the same subject. *See id.* at 607.

■ First, the Court finds that the idea of a Puerto Rican restaurant is not protected under copyright law. Plaintiff planned to open the restaurant in Old San Juan, a historic neighborhood that is a favored destination for tourists visiting Puerto Rico that boasts dozens of "Puerto Rican" style restaurants. The idea for a Puerto Rican restaurant, in itself, is an idea that cannot be removed from the public realm.

However, Plaintiff's idea does not necessarily fall completely outside the coverage of copyright law because there is more than one way to express the idea for a Puerto Rican restaurant. Yet, Plaintiff's plan for a Puerto–Rican theme restaurant clearly constitutes an idea with a very limited number of expressions, to the extent that the idea merges almost completely with the expression. There are certain aspects of a Puerto Rican restaurant that will be common to all Puerto Rican restaurants, including the general type of food and drink, the decor, and the music. Any similarities between Plaintiff's "Rumba" and Ricky Martin's "Casa Salsa" that "stem solely from the commonality of the subject matter [are] not proof of unlawful copying." *Concrete Machinery*, 843 F.2d at 607, quoting *Durham Indus. Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980). Thus, aspects of Plaintiff's idea that effectively merge with the expression of the idea, for example, serving Puerto Rican food at a Puerto Rican restaurant, cannot receive copyright protection. The substantial similarity test only applies to those aspects of the work which do not merge. *See id.* ("as ideas and expression merge, fewer and fewer aspects of a work embody unique and creative expressions of the idea; a copyright holder must then prove substantial similarity to those few

aspects of the work that are expressions not required by the idea.")

For those aspects of Plaintiff's idea that are not completely inseparable from the idea of a Puerto Rican theme restaurant, the Court will apply the "substantial similarity test." In order to prevail on a claim of copyright infringement, a plaintiff must prove that the infringing material is "substantially similar" to its own protected material. While summary judgment can be appropriate in a copyright suit, the motion must be denied when the question of "substantial similarity is one on which reasonable minds can differ." *Rogers v. Koons,* 960 F.2d 301 (2d Cir.1992). Thus, the Court must find that reasonable minds could not differ on the question of substantial similarity.

Whether substantial similarity exists between copyrighted material and infringing material is determined by applying the "ordinary observer test." The test asks, "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Concrete Machinery*, 843 F.2d at 607, quoting *Educational Testing Serv. v. Katzman,* 793 F.2d 533, 541 (3d Cir.1986). This test applies only to those elements of the copyrighted work that are legally protected. *See Concrete Machinery*, 843 F.2d at 607. Where the ways of expressing an idea are very limited, "the burden of proof is heavy on the plaintiff who may have to show 'near identity' between the works at issue." *Concrete Machinery*, 843 F.2d at 606. For example, in *Concrete Machinery*, where Plaintiff claimed that Defendant had illegally copied its particular life-size lawn ornament deer, the Court stated, "Appellant cannot prohibit others from appropriating this idea; it can, however, prohibit

any actual copying of its own version of a 'realistic looking concrete deer.'" *Id.* at 607.

█ The Court now turns to the facts to determine (1) what elements of Plaintiff's plan are protected by copyright law and (2) whether the protectable elements of Plaintiff's plan are so substantially similar to the elements of Defendant Casa Salsa restaurant in the eyes of an ordinary observer that they constitute copyright infringement.

The Plaintiff has described his restaurant plan in his "Market Study for a Hypertheme Restaurant in San Juan, Puerto Rico" which was submitted as his Master's Thesis in March, 1997, as follows:

1. The restaurant name is "Rumba Caribbean Cuisine & Bar."

2. "Rumba" refers to the secular dance, music, and poetry expression that developed among African slaves brought to Cuba during colonial times. Salsa music is derived from "Rumba."

3. The restaurant will be in the "Golden Triangle" area of San Juan, an area that has been slated for economic development.

4. The restaurant will be a theme restaurant like the Hard Rock Café and Planet Hollywood.

5. The restaurant will begin in San Juan then expand to other large cities and become a type of "embassy" for Puerto Rico.

6. The restaurant will have a vibrant and interactive atmosphere catering to both tourists and locals.

7. The restaurant will explore the "microbrewery theme".

8. The restaurant will sponsor local charity events.

9. The restaurant will invite local and international celebrities.

10. The restaurant will be the exclusive place for music press conferences.

11. The restaurant will offer free tours to students and groups.

12. The restaurant will maintain an atmosphere "alive" with background music, however, there will be a separate dining area away from the bar to avoid noise.

13. The restaurant will target the whole family.

14. The restaurant will have a "merchandise corner" with logo wear, clothing, and souvenirs.

15. The restaurant will offer free salsa lessons.

16. The restaurant will be decorated with salsa memorabilia.

17. The food will be "criollo creative" using typical Puerto Rican seasonings, like adobo and sofrito.

18. The menu will also offer American-style cuisine.

19. Most appetizers and entrees will be accompanied by "salsa"—a special seasoning.

20. The restaurant will use theme-based elements, such as congas, timbales, piano, rumba names, and guaguancó.

21. Theme-based elements include:
    a. Piano bar for VIPs;
    b. tumblers shaped like trombones;
    c. bar stools shaped like conga drums;
    d. beer coolers shaped like timbales (drums);
    e. a "cencerro" (a type of bell) to announce tips;
    f. a trumpet to announce birthdays;

g. mini-congas for Mofongos (a Puerto Rican dish);

h. dressing containers for unique seasonings shaped like bongos.

22. The marketing plan is accompanied by drawings. The first drawing depicts a woman behind a bar, presumably a bartender, wearing a shirt whose sleeves have a series of ruffles. The bar stools are shaped like drums. Two people are dancing on top of a platform shaped like a horn.

23. The next picture depicts a woman with a bikini top, bracelets, and a type of hat that looks like a pile of fruit [1], offering a fruity cocktail to a seated couple. The woman is pushing an ice cream cart whose style is very typical in Puerto Rico. On the side of the ice cream cart, there is a list of typical Puerto Rican ice cream flavors.

24. The final picture depicts a woman with a bikini top under a sign reading "cold salsa beers" and next to a cooler filled with beers that is shaped like a typical Puerto Rican drum set ("Timbales").

Casa Salsa, now closed, was opened December 16, 1998, in South Beach, Florida, by Ricky Martin, an internationally-recognized Puerto Rican pop star. The restaurant was a particular type of theme restaurant, more common in recent years, whose principal theme is its celebrity owner. The Puerto Rico Tourism Company supported the restaurant. The cooking, decor, and music of the restaurant all drew on Puerto Rican themes. According to Plaintiff, the Restaurant bore an "almost identical similarity to the total concept and feel" of Plaintiff's restaurant. The Plaintiff states the following elements as proving this "almost identical similarity":

1. For a short time, the interior bar of Casa Salsa was called "Rumba" but the name was changed to "Rum Va" to reflect the sponsorship by Rums of Puerto Rico; according to Plaintiff, this shows that Defendants used Plaintiff's restaurant name.

2. Both restaurants had separate dancing areas.

3. Both restaurants had a bar separate from the dining area.

4. Both restaurants offered Puerto Rican Cuisine.

5. Both restaurants sold Puerto Rican Coffee.

6. Both restaurants had salsa-based recipes. Plaintiff offered "Rumba Sauce" and Defendants offered "Ajili Mojili sauce".

7. Both restaurants played Salsa music.

8. Both restaurants provided Internet Access.

9. Both restaurants were to serve as the "Embassy" of Puerto Rico.

10. Both restaurants targeted tourists as their clientele.

11. Both restaurants provided free salsa lessons.

12. Both restaurants had "directional lighting and special effects".

13. Both restaurants had a Puerto Rico theme.

14. Both restaurants had a gala opening with local and international personalities.

---

**1.** This fruit-based hat appears to be inspired by those worn by famous singer and actress Carmen Miranda.

15. Both restaurants were to serve as the exclusive site for music industry press conferences.

16. Both restaurants were to offer free tours.

The Court finds that none of these elements are subject to the protection of copyright law. A party simply cannot copyright the idea for a Puerto Rican restaurant that serves Puerto Rican food, plays salsa music, and serves as a sort of embassy for Puerto Rico. It would be absurd, for example, for the Court to declare that a Mexican Mariachi-themed restaurant that served as a type of embassy for Mexico would deserve copyright protection. A ruling of this sort would force a nationwide closure of Mexican-themed restaurants.

However, assuming arguendo that the elements listed by Plaintiff are subject to the protection of copyright law, there are so many fundamental differences between the restaurants that Plaintiff could not possibly show that they are substantially similar in the eyes of the ordinary observer, as required by law. The Court has isolated the following elements as showing substantial differences between the two restaurants that make a finding of substantial similarity impossible.

First, Casa Salsa was a Ricky Martin theme restaurant. This theme was extremely important for the visibility of the restaurant and its potential profits. The theme explains the restaurant's Salsa and Puerto Rican themes and its position as an "embassy" for Puerto Rico, as Ricky Martin is considered a sort of ambassador for Puerto Rico. In addition, it explains the restaurant's position as a site for music press conferences, as Ricky Martin is a famous musician. It explains the gala opening, as Ricky Martin is a famous personality, the salsa lessons, as Ricky Martin's music and dance routines are influenced by salsa music and dancing, and the target market of tourists, as theme restaurants are very popular with tourists.

Second, Plaintiff stated at his deposition that he had visited the restaurant. When asked by opposing counsel what about the restaurant differed from his idea, he stated that the uniforms of the employees did not conform to his idea and that the "decoration was more classy than what I envisioned. My proposal was more tropical". *See* Plaintiff's Deposition at 43. Thus, even Plaintiff admits that the decoration of the two restaurants was different.

Third, the menu of the restaurants were markedly different. Both restaurants offer at least some Puerto Rican cuisine. Defendants' restaurant offers very traditional appetizers, fritters, side dishes, and desserts, with entrees that could best be classified as elegant or continental Puerto Rican, refining traditional dishes with modern, sophisticated elements. Plaintiff's restaurant, on the other hand, serves traditional Puerto Rican dishes along side dishes such as nachos, pizza, a "salsa burger", a cuban sandwich, and a "surf and turf," offerings that are best classified as American or international and very casual. Plaintiff's menu is, overall, more casual and appealing to the average tourist, whereas Defendants' menu offers entrees and prices that would appeal to the more high-end tourist.

Finally, Defendants' restaurant was in Miami, while Plaintiff's restaurant was to be in Old San Juan, Puerto Rico. These cities offer substantially different atmospheres, values, architecture, and culture.

The theme, cuisine, decoration, and location of the two restaurants are all substantially different. The Court cannot find any basis for a copyright action in this matter because Plaintiff's idea is simply not protected by copyright law and, even if it

were, the interpretations of the Puerto Rican theme behind each restaurant are so markedly distinct that a finding that copyright infringement had occurred would be absurd. Therefore, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims under the Copyright Act.

## B. Trademark Infringement under the Lanham Act

■ Plaintiff brings a second claim for infringement under the Lanham Act, 15 U.S.C. § 1125(a). The Lanham Act provides protection against the use of any word, term, name, symbol, or device that "is likely to cause confusion, or to cause mistake, or to deceive" as to the source of a product. 15 U.S.C. § 1125(a). The Lanham Act extends protection not only to words and symbols, but also to "trade dress," defined as "the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the customer." *Chrysler Corp. v. Silva,* 118 F.3d 56, 58 (1st Cir.1997), quoting *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 999 (2d Cir.1997). For example, the overall atmosphere, decorations, design, and theme of a restaurant constitutes "trade dress" and can give rise to a claim for trademark infringement under the Lanham Act. *See e.g. Two Pesos, Inc. v. Taco Cabana,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). In order for trade dress to receive protection under Section 43(a), a Plaintiff must prove that the dress is: (i) used in commerce; (ii) non-functional; and (iii) distinctive. *See Yankee Candle Co., Inc. v. Bridgewater Candle Co.,* 259 F.3d 25, 38 (1st Cir. 2001).

■ The fundamental issue before the Court is the third prong: whether Plaintiff's trade dress is distinctive. Trade dress can be distinctive in one of two ways. First, trade dress can be inherently distinctive, meaning that it by nature identifies a particular source. *See id.* In addition, trade dress can have acquired distinctiveness, meaning that the trade dress has acquired a secondary meaning so that the public sees it as identifying the source of the product rather than the product itself. *See id.* Finally, to prove infringement of protected trade dress, the plaintiff must show that another's use of a similar trade dress is likely to cause confusion among consumers as to the product's source. *See id.*

■ Plaintiff's trade dress, which consists of all of the elements of his planned restaurant as discussed at length above, is not distinctive, either inherently or through acquired secondary meaning, and thus does not warrant trademark protection under the Lanham Act. The Court has discussed above the substantial differences between Plaintiff's restaurant idea and Defendants' restaurant. Plaintiff's trade dress is not unique or unusual; it is in fact highly general. There could be no confusion among customers as to the product's sources because the two restaurants are so substantially different. Therefore, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims under the Lanham Act.

## C. Claims under the Berne Treaty

■ Plaintiff also brings a claim for infringement under the Berne Convention for the Protection of Literary and Artistic Works, an international treaty addressing copyrights. The United States acceded to the Berne Convention via the Berne Convention Implementation Act of 1988, Pub.L. No. 100–568, 102 Stat. 2853. The Berne Convention does not create a separate copyright cause of action. Section 104(c) of the Copyright Act makes clear that the Berne Convention provides no

greater or lesser protection for copyright than the Copyright Act itself:

> Effect of the Berne Convention.—No right or interest in a work eligible for protection under this title may be claimed by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto. Any rights in a work eligible for protection under this title that derive from this title, other Federal or State statutes, or the common law, shall not be expanded or reduced by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto.

17 U.S.C. § 104(c).

Thus, the Berne Convention cannot be used to support a separate copyright claim. Therefore, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims under the Berne Convention.

### D. State Law Claims

Plaintiff has brought claims under Puerto Rico law. Because this is not a diversity case, the power of the federal court to hear and to determine state law claims depends on the presence of at least one "substantial" federal claim in the lawsuit. *Newman v. Burgin,* 930 F.2d 955, 963 (1st Cir.1991) *citing United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Federal jurisdiction hinges on the federal copyright and trademark claims in this case. Since "pendent" or "supplementary" claims consist of state matters over which Congress did not grant federal courts independent jurisdiction, once the federal question issues are dismissed the Court may choose to dismiss the entire case. *See Newman v. Burgin,* 930 F.2d at 964. Therefore, the Court hereby **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendants arising under Puerto Rico law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's claims under the Copyright Act, the Lanham Act, and the Berne Treaty against Co–Defendants Casa Salsa Restaurant, represented by Manuel Benítez, Promotores Latinos Corporation, represented by José Benítez and Rafael Benítez, and Luis Sierra Suárez, a partner of the Casa Salsa restaurant, are **DISMISSED WITH PREJUDICE** for failure to state a claim. Plaintiff's claims under Puerto Rico law against the above Co–Defendants are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**