# United States Court of Appeals
## For the First Circuit

No. 05-1027

OSVALDO GARCÍA-GOYCO; NADJA BAGUÉ; CONJUGAL PARTNERSHIP GARCÍA-
BAGUÉ; PASO DEL INDIO, INC.,

Plaintiffs-Appellants,

v.

LAW ENVIRONMENTAL CONSULTANTS, INC., d/b/a/ LAW ENVIRONMENTAL-
CARIBE, INC.,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Dyk[*],
Circuit Judges.

Guillermo J. Ramos Luiña, with whom Rivera, Tulla &
Ferrer, was on brief, for appellants.
Manuel A. Pietrantoni, with whom Mariano A. Mier-Romeu,
and Fiddler, Gonzáles & Rodríguez, PSC, were on brief, for
appellees.

October 28, 2005

[*]Of the Federal Circuit, sitting by designation.

**DYK, <u>Circuit Judge</u>**.  Law Environmental Consultants, Inc., d/b/a Law Environmental-Caribe, Inc. ("LEC" or "appellee"), prevailed on summary judgment in an action for copyright infringement brought by Osvaldo García-Goyco ("García-Goyco") and Nadja Bagué, personally and on behalf of their conjugal partnership and Paso del Indio, Inc. ("PDI") (collectively "appellants").  This judgment was not appealed.  Subsequently, the district court awarded costs and attorney's fees to LEC as a prevailing party under the Copyright Act, 17 U.S.C. § 505.  This appeal followed. We affirm the award of costs and attorney's fees.

## I.

### A. The Copyright Action

The parties were engaged by the Puerto Rican Highway Authority ("PRHA") to provide historical preservation services for an archeological site.  On May 6, 1993, García-Goyco was employed directly by PRHA to prepare various preliminary documents during the planning and proposal phases of the project.  García-Goyco prepared a "Mitigation Plan" in October of 1993, and a "Research Design and Proposal" during 1994 and 1995.  On February 6, 1997, PRHA informed García-Goyco of its intent to contract with LEC to oversee the administration of the laboratory phase of the project, and requested that García-Goyco and his company, PDI, negotiate a subcontract for the delivery of archeological services directly with LEC.

Upon receipt of this information, on February 25, 1997, García-Goyco obtained copyrights for the two documents he had prepared pursuant to the agreement with PRHA during the planning and design phases of the project. García-Goyco then notified PRHA and LEC that they would have to negotiate for the implementation and use of those documents during the administration phase, because he owned the copyrights to the documents.

On September 5, 1997, PDI contracted with LEC, in writing, to provide technical services for the preliminary administration of the project in accordance with the PRHA/LEC agreement. LEC's contract with PRHA to serve as prime contractor during the administrative phase of the project was formalized in writing on November 20, 1998. It provided that "[t]he [PRHA] will have a [sic] complete and unrestricted ownership rights to all Reports, Technical Memorandums, plans, data . . . or any other work product . . . prepared by [LEC] in connection with the services' performance." On January 20, 1999, García-Goyco copyrighted a third research and work plan, reworking the two documents from the prior work done for PRHA, and incorporating work done pursuant to the contract with LEC. The three copyrighted documents, as described in the district court's decision on the merits, are compilations of the works of various authors, the bulk of the content comprising "historical fact discoveries," and otherwise consist "primarily [of] procedures and methods of operation for the

-3-

recovery, analysis and reporting of findings related to an archeological site." Osvaldo García-Goyco v. Puerto Rico Highway Auth., 275 F. Supp. 2d 142, 147-49, 154 (D.P.R. 2003).

Following LEC's supposed failure to comply with an oral contract to hire PDI for the final administrative phase of the project, on April 20, 1999, García-Goyco brought suit against LEC[1] in the United States District Court for the District of Puerto Rico. The complaint alleged copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., as well as pendent state law claims for breach of contract and unjust enrichment. It was "undisputed that . . . LEC and the Highway Authority utilized the data in the Research Design and Work Plan prepared by plaintiff pursuant to his contracts with them." García-Goyco, 275 F. Supp. 2d at 146.

After over two years of litigation, the district court entered summary judgment in favor of LEC on April 30, 2003. The copyright claim was dismissed with prejudice and the state law claims were dismissed without prejudice. The district court held that the works at issue were not copyrightable because: (1) they were compilations of noncopyrightable subject matter under section 102 of the Copyright Act[2]; (2) the arrangement and selection of the

---

[1] PRHA was initially named as a defendant but was subsequently dismissed and is not involved in the attorney's fees dispute.

[2] "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system,

-4-

noncopyrightable materials within each work lacked originality; and (3) the works were prepared in connection with a federally authorized prehistoric survey, and therefore were the property of the federal government under 36 C.F.R. § 79.3(a)(2).

## B.  The Fee Dispute

On May 21, 2003, LEC, having prevailed on the merits, filed a timely motion requesting costs and attorney's fees in accordance with the Copyright Act, 17 U.S.C. § 505.[3]  On March 8, 2004, the district court issued an order denying LEC's motion, "without prejudice of being resubmitted with satisfactory evidence, in addition to LEC's attorneys' own affidavits, justifying the reasonableness of its requested rate for attorney's fees."  On March 16, 2004, LEC filed a motion for an enlargement of time, requesting an additional thirty days (until April 22, 2004) to submit the requested evidence on the reasonableness of its rate for attorney fees.  In docketing LEC's motion for an enlargement of time, the district court set a deadline of March 29, 2004, for the

---

method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b) (2000).

[3]    The fee shifting provision of the 1976 Copyright Act states: "In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  Pub. L. No. 94-553, Title 1, § 101, 90 Stat. 2586 (1976) (codified at 17 U.S.C. § 505 (2000)).

filing of any response in opposition from appellants. Appellants filed no such response.

On April 21, 2004, one day before the requested deadline of April 22, 2004, LEC submitted additional evidence concerning the reasonableness of its attorney's fees rates to the district court. On May 11, 2004, appellants for the first time raised a timeliness challenge to the attorney's fees request. Appellants also reiterated a series of other objections to the request for fees and costs, arguing, inter alia, that the award was not warranted under the factors set forth in the Supreme Court's decision in Fogerty v. Fantasy, 510 U.S. 517 (1994); that the rates charged were unreasonable; and that LEC improperly incurred translation costs after the district court dismissed the action.

On November 12, 2004, the district court ordered García-Goyco to pay LEC $13,721.82 in costs and $98,000.00 in attorney's fees. The district court noted that "[p]laintiffs . . . contend that attorney's fees are not warranted in this case because the Court never stated nor relied on any finding that García-Goyco's claim was frivolous or that plaintiffs filed their action in bad faith." The court found that "copyrighting the[] documents was done in bad faith in order to leverage LEC's cooperation in hiring [García-Goyco] [and that] further use of the copyrights to bootstrap a state law contract action into federal court wasted an immeasurable amount of this Court's time as well as causing

inappropriate and unnecessary legal expenses for LEC." This appeal followed. Our review as to the issue of jurisdiction is plenary. We review the district court's award of costs and attorney's fees for abuse of discretion. <u>Invessys, Inc.</u> v. <u>McGraw-Hill Cos., Ltd.</u>, 369 F.3d 16, 19 (1st Cir. 2004).

## II.

We address first the question whether the district court had jurisdiction to award attorney's fees under 17 U.S.C. § 505.[4] Appellants contend that the district court's order of March 8, 2004, denying LEC's initial request without prejudice and with leave to resubmit, was a final order. They therefore claim that the district court was without jurisdiction to rule on LEC's April 21, 2004, motion supplementing the original fee request with additional evidence, because this motion was filed after the mandatory ten-day period to file a Rule 59(e) motion had expired.[5]

There is no question that awards of attorney's fees may be appealed separately as final orders after a final determination of liability on the merits. <u>See</u> <u>In re Nineteen Appeals</u>, 982 F.2d

---

[4] Both parties now agree that LEC's motion for costs was timely. LEC filed a motion to amend the district court's order on costs on March 23, 2004. Pursuant to F.R.C.P. 59(e), this motion was filed within ten days (excluding Saturdays, Sundays, and March 22, which is a legal holiday in Puerto Rico) from the district court's March 8, 2004, order denying costs. Thus, even if the Rule 59(e) time limit applied, the motion was timely.

[5] Rule 59(e) provides that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e).

603, 609 n.10 (1st Cir. 1992) (noting that "orders setting attorneys' fees are separate from determinations on the merits in a jurisdictionally significant sense").  There is also no question that a dismissal of a complaint without prejudice is generally considered to be a final judgment for appeal purposes.  Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 628-29 (1st Cir. 2000).  Here, however, LEC argues that the district court's order was conditional rather than final because, in denying the fees without prejudice, the district court expressly invited the defendants to file an amended request for fees including additional evidence.

The question of whether the district court's initial dismissal was final is complicated.  In Jung v. K. & D. Mining Co., 356 U.S. 335 (1957), the Supreme Court held that where a district court dismissed a complaint but granted the plaintiff a specific period of time to refile, the initial dismissal was not final, and an appeal could be filed after a later final order of dismissal. Id. at 336-37.  The circuits have adopted conflicting interpretations of Jung.  Compare Richards v. Dunne, 325 F.2d 155, 156 (1st Cir. 1963) (finding that the district court's dismissal of plaintiffs' claim was not a final judgment where the court allowed plaintiffs a specific time period to amend and plaintiffs did nothing except file a notice of appeal after the time period elapsed), and WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (same), with Otis v. City of Chicago, 29 F.3d

-8-

1159, 1166-68 (7th Cir. 1994) (en banc) (finding that after the period of leave to amend had elapsed, the district court's dismissal of plaintiff's case became final), and Schuurman v. Motor Vessel "Betty K V", 798 F.2d 442, 445 (11th Cir. 1986) (same).

This case presents a particularly difficult problem because the original dismissal order provided no specific time limit for filing a new attorney's fees request. This court has not addressed this particular issue, and the scant authority concerning such orders reveals no uniformly accepted approach. See Schuurman, 798 F.2d at 446 (Hatchett, J., concurring) (noting that where no time limit for amendment is given by the district court, the initial dismissal should be appealed within thirty days); Azar v. Conley, 480 F.2d 220, 222 (6th Cir. 1973) (finding that a district court's dismissal of a complaint was not final and not appealable where it set forth no time limit for amendment but detailed what a proper complaint should contain).

We need not decide whether the district court's initial dismissal here was final because, even if it was final and the ten day limit of Rule 59 applied to preclude amendments to that judgment, the judgment did not preclude LEC from filing a new motion for attorney's fees based on different evidence. Here, the district court explicitly cabined its dismissal order by denying the motion "without prejudice of being resubmitted with satisfactory evidence, in addition to LEC's attorneys' own

affidavits, justifying the reasonableness of its requested rate for attorney's fees." We view the district court's order as being "with prejudice" to another request based on the same evidence, but "without prejudice" to a new motion based on additional evidence. In such circumstances, a single judgment can preclude further litigation of particular issues, while still permitting further litigation on other issues and the underlying claim itself. See 18A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Pro. Juris. 2d § 4435, at 134 (2d ed. 2002).

To the extent that the dismissal was "without prejudice" LEC was not barred from refiling the claim with the same court. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505-06 (2001); see also López-Gonzáles v. Municipality of Comerío, 404 F.3d 548, 553 (1st Cir. 2005) (holding that a dismissal without prejudice does not bar refiling the claim before the same court, notwithstanding the statute of limitations); Wright & Miller, supra § 4435, at 132 n.4 (noting that a dismissal without prejudice is not a final adjudication on the merits for res judicata purposes). Therefore, the district court's dismissal here did not bar LEC from refiling its request for attorney's fees with additional evidence.

Furthermore, to the extent appellants contend that LEC was precluded from refiling its request under Puerto Rico Local Rule 332 because it was not filed within forty-five days following

the entry of judgment,[6] we find this argument unpersuasive. LEC argues that the district court had discretion to depart from the local rules in the circumstances of this case. We agree. "In general, it is for the district court to determine what departures from its rules may be overlooked." United States v. Diaz-Villafane, 874 F.2d 43, 46 (1st Cir. 1989) (internal quotation marks and alterations omitted); Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004) (holding that "the application of a district court's local rule is reviewed for abuse of discretion"). While the district court does not have "unbridled" discretion to ignore the local rules, it enjoys a "considerable latitude in applying local procedural rules . . . and in departing from them." Diaz-Villafane, 874 F.2d at 46. We generally will not disturb the district court's departure from its local rules so long as there is sound reason for the departure and no party's substantial rights have been unfairly jeopardized. Id.

Here, LEC filed its initial fee request fifteen days after the district court granted summary judgment in its favor. The district court took over nine months to dismiss this request. Eight days after this dismissal, LEC filed a motion requesting an additional thirty days within which to refile its request. Despite

---

[6]Rule 332 was amended on September 29, 2003, and now appears as Puerto Rico Local Rule 54(a). It states that "[a] motion requesting attorneys' fees must be filed within forty-five (45) days following entry of judgment."

the district court's express invitation to appellants to oppose LEC's request for an extension of time, appellants made no objection. LEC then filed a new motion for attorney's fees within the requested thirty days, and within forty-five days from the initial order denying its request. Under these circumstances, we cannot find that the district court's departure from the local rule constituted an abuse of discretion.

## III.

Having decided that LEC's second fee request was properly before the district court, we must now turn to the district court's award of fees. Appellants contend that even if the fee request was not time-barred, the district court should not have awarded fees under Fogerty v. Fantasy, 510 U.S. 517 (1994).

Contrary to appellants' argument, an explicit finding of frivolity or bad faith is not required for the award of attorney's fees under 17 U.S.C. § 505. In Fogerty, the Supreme Court interpreted the attorney's fees provision of the Copyright Act and rejected a "dual" standard under which a greater burden had been placed on prevailing defendants than prevailing plaintiffs before fees could be awarded. See 510 U.S. at 520-22 & n. 8, 534. The Court expressly disapproved the practice of awarding fees to prevailing defendants only upon a showing of frivolousness or bad faith. Id. at 531-32. At the same time, the Court rejected the "British Rule" requiring fees as a matter of course for the winner.

-12-

Id. at 533.  Instead, it opted for a middle ground, under which "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion."  Id.

The Court approved the "evenhanded" approach adopted by the Third Circuit and observed that the court's discretionary decision to award fees could be guided by the non-exclusive list of factors that the Third Circuit had identified in Lieb v. Topstone Industries, Inc., 788 F.2d 151 (3rd Cir. 1986).  That list included "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" 510 U.S. at 534 n. 19 (quoting Lieb, 788 F.2d at 156); see also Lotus Dev. Corp. v. Borland Int'l., Inc., 140 F.3d 70, 72-73 (1st Cir. 1988) (quoting Fogerty, 510 U.S. at 534 n.19).

In the past, this court has applied the Fogerty factors in affirming awards of attorney's fees where the plaintiff's copyright claim was neither frivolous nor instituted in bad faith. Thus, the award of fees has been approved where the claim was "objectively weak."  See, e.g., Invessys, Inc., 369 F.3d at 20-21; Matthews v. Freedman, 157 F.3d 25, 29 (1st Cir. 1998); see also Fantasy, Inc. v. Fogerty, 94 F.3d 553, 558 (9th Cir. 1996).  For example, in Invessys, the district court rejected a copyright claim

-13-

because the plaintiffs' company did not buy, and therefore did not own, the copyrighted software. The district court awarded fees. In affirming the award of fees, this court stated that "at first blush it might appear as if the plaintiffs had a colorable claim." 369 F.3d at 21. However, after further factual development, the plaintiffs' claim of ownership of the software appeared "more dubious." Id. This court found that the underlying copyright infringement claim was "objectively quite weak." Id.

So too in Matthews the district court awarded fees to the prevailing party where both parties made colorable arguments regarding whether the phrase appearing on the defendant's t-shirt was substantially similar to the phrase on the plaintiff's t-shirt. 157 F.3d at 26. The court found a lack of similarity and awarded fees to the alleged infringer. This court concluded that the "district court could conclude that the losing party should pay even if all of the arguments it made were reasonable." Id. at 29.

Here, just as in Invessys and Matthews, the district court made no express finding of frivolity, nor was there a finding that the copyright litigation was itself instituted in bad faith. In justifying the award of fees, the court stated that "copyrighting the[] documents was done in bad faith in order to leverage LEC's cooperation in hiring [García-Goyco] [and that] further use of the copyrights to bootstrap a state law contract action into federal court wasted an immeasurable amount of this

Court's time as well as causing inappropriate and unnecessary legal expenses for LEC." We understand the district court to have held that fees were justified because (1) the plaintiffs misused the copyright to leverage its position with respect to the contract and (2) the plaintiffs' copyright claim was otherwise not sufficiently strong to warrant the federal action, the purpose of the federal action being to bring state claims within the district court's jurisdiction. We need not reach the misuse ground[7] because we agree that the district court could properly find that the copyright claim was lacking in merit because García-Goyco had surrendered ownership in the works at issue.

The district court concluded that the works were not copyrightable because they were "associated records" that were prepared for, or in connection with, a federal prehistoric resource project under 36 C.F.R. § 79.3(a)(2), and therefore, they were the property of the United States Government.

The relevant provision of 36 C.F.R. § 79.3(a)(2) states:

> Associated records that are prepared or assembled in connection with a Federal or federally authorized prehistoric or historic resource survey, excavation or other study are the property of the

---

[7] This court has not yet recognized misuse of a copyright as a defense to infringement. See Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1170 (1st Cir. 1994) ("[T]his case does not require us to decide whether the federal copyright law permits a misuse defense."); Broad. Music Inc. v. Hampton Beach Casino Ballroom Inc., No. CV-94-248-B, 1995 WL 803576, at *5 n.7 (D.N.H. Aug. 30, 1995) ("The First Circuit has not addressed the issue of copyright misuse.").

> U.S. Government, regardless of the location of the resource.

The term "associated records" is defined by the regulation as "original records (or copies thereof) that are prepared, assembled and document efforts to locate, evaluate, record, study, preserve or recover a prehistoric or historic resource" which include "proposals" and "reports." 36 C.F.R. § 79.4(a)(2) (2004). The district court's determination that the copyrighted documents here were covered by the regulation was plainly correct.

Even if the regulation were inapplicable, there is a strong argument that PRHA and LEC obtained non-exclusive licenses to use the works because García-Goyco prepared the documents pursuant to agreements with these entities and was compensated for the work. See, e.g., Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558-59 (9th Cir. 1990); Foad Consulting Group, Inc. v. Musil Govan Azzalino, 270 F.3d 821, 825-831 (9th Cir. 2001); 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A][7] (2005). Contrary to appellants' argument, there is no reason to infer that these licenses were terminated. Cf. Effects Assocs., Inc., 908 F.2d at 559 n.7 (finding that a non-exclusive license was not terminated by refusal of defendant to pay full compensation for the work). Under these circumstances, the district court properly found that appellants had no colorable claim to assert in federal court.

**IV.**

We also conclude that there is no obvious error in the amount of the district court's fee award. Our review of the district court's award of attorney's fees to a prevailing party under the Copyright Act is extremely deferential. "We will disturb a ruling under section 505 only if the record persuades us that the trial court indulged in a serious lapse in judgment." Lotus Dev. Corp., 140 F.3d at 72 (internal quotation marks and citation omitted). LEC provided satisfactory evidence of the reasonableness of the rates charged by its attorneys and of the billing practices followed. See Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). The court also was within its discretion in relying upon its own knowledge and experience regarding attorneys' rates and the local market. Andrade v. Jamestown Hous. Auth., 82 F.3d 1179, 1190 (1st Cir. 1996); Wojtkowski v. Cade, 725 F.2d 127, 130 (1st Cir. 1984).

Contrary to García-Goyco's arguments, the district court also did not err in taxing the full costs claimed by LEC, including the costs incurred in translating the copyrighted documents. That the documents were translated after the district court's grant of summary judgment is of no import. The documents were submitted to the court and were part of the record. As such, the rules required

-17-

their translation to English in the event of any future appeal.[8]
1st Cir. R. 30(d) (this court "will not receive documents not in
the English language unless translations are furnished"); Ramos-
Baez v. Bossolo-Lopez, 240 F.3d 92, 94 (1st Cir. 2001).

Accordingly, we affirm the district court's award of
attorney's fees and costs.

It is so ordered.

---

[8] The translations were done in early May, 2003, and LEC
did not know whether appellants would appeal the judgment until
June 5, 2003. In addition, the district court's earlier order to
translate the documents had never been rescinded.

-18-