# United States Court of Appeals
## For the First Circuit

---

Nos. 06-1556; 06-2127

MAG JEWELRY CO., INC.

Plaintiff - Appellant/Cross-Appellee,

v.

CHEROKEE, INC.; TARGET CORPORATION, d/b/a Target Stores; STYLE
ACCESSORIES, INC.,

Defendants - Appellees/Cross-Appellants,

ROBERT MARGOLIS,

Defendant/Cross-Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

---

Before

Toruella, Circuit Judge,
Gibson,[*] Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Robert W. Clarida, with whom Thomas A. Tarro, III, Kris
Macaruso Marotti, Cowan, Liebowitz & Latman, P.C., and The Law Firm
of Thomas A. Tarro, III, were on brief, for appellant/cross-
appellee.

---

[*]Of the Eighth Circuit, sitting by designation.

Thomas R. Noel, with whom John R. Harrington and Noel & Gyorgy LLP, were on brief, for appellee/cross-appellant Style Accessories, Inc.

Craig M. Scott, with whom Christine K. Bush and Duffy Sweeney & Scott, Ltd., were on brief for appellees/cross-appellants Cherokee, Inc., Target Corporation and Robert Margolis.

_____

August 8, 2007

_____

**LIPEZ**, **Circuit Judge**. In December 2001, plaintiff Mag Jewelry Company ("Mag") purchased some costume jewelry at a Target store in Rhode Island. The necklaces, whose pendants were comprised of four crystal stones in the shape of an angel, were of interest to Mag because it holds a copyright on that "crystal angel" design, and Target was not one of Mag's customers. Mag subsequently filed this copyright infringement action against Target Corporation and its supplier, Style Accessories, Inc. ("Style").[1] The defendants denied copying Mag's angel, claiming that their jewelry was based on an identical design independently created by someone else. Following presentation of Mag's case to a jury, the district court granted defendants' motion for judgment as a matter of law. Mag appeals that ruling, and, in a cross-appeal, defendants challenge the district court's refusal to award attorney's fees.[2] After careful review of the record, we affirm the judgment for defendants on the merits but reverse the fees ruling.

---

[1] Also named as defendants were Cherokee, Inc., a company whose principal business is to license trademarks to companies, and Cherokee's chief executive officer, Robert Margolis. The crystal angels that Mag purchased at Target were branded with the "Cherokee" trademark. Mag dismissed all claims against Margolis in June 2005. Cherokee remains a defendant-appellant, but its relationship to the case is derivative of Target's and we therefore do not separately address its liability.

[2] Mag's appeal is designated as No. 06-1556; the cross-appeal was filed several months later and is separately designated as No. 06-2127.

## I.

The angel design at the center of this controversy is a fairly simple figure. A round crystal stone serves as its head and a teardrop stone as its body, two oblong ("navette") stones create the wings, and a metal "jump" ring – a piece typically used to link a charm to a chain – is attached at the top as a halo. The crystal stones are commercially sold in standard sizes, and the stones are neither cut nor otherwise altered to create the angel shape at issue here. The design has been used for necklaces, earrings and pins.

The facts underlying the dispute – other than the ultimate question whether copying occurred – are largely undisputed. Mag's president, Daniel Magnanimi, applied for copyright registration for the angel in November 1995, listing 1995 as the year of its creation and June 1, 1995 as the date of first publication. The United States Copyright Office issued the registration and, in the following months, Mag sent letters through counsel to dozens of individuals and businesses demanding that they stop selling similar crystal angels.

One such letter was sent to Alan Gregerman, a Rhode Island jewelry designer and manufacturer,[3] who was selling a crystal angel virtually identical to Mag's. Gregerman hired an

---

[3] Gregerman's jewelry business is called Alan Gregerman Company.

-4-

attorney, who in February 1996 sent a response to Mag stating that Gregerman had created the same angel design earlier than 1995 and that he also had "first manufactured, marketed, and sold products incorporating the angel design" before that year. Gregerman later testified that he created his crystal angel in the summer of 1994, that he began selling and shipping copies by September 1994, and that his angel was included in a 1995 gift catalog. His attorney's letter reciprocally accused Mag of copyright infringement and demanded that Mag "cease and desist" using the angel in any products.

There were further communications between Mag's and Gregerman's attorneys, followed by two significant events. First, in June 1996, Mag filed a supplement to its original copyright registration, changing its crystal angel's date of creation to March 1992 – more than two years earlier than Gregerman claimed to have created his angel. Second, Gregerman and Magnanimi agreed that they both would sell crystal angels without interference or threat of suit from the other, and Gregerman also gave Mag permission to make and sell two other angel jewelry designs that he had created. Magnanimi sent Gregerman a letter reflecting that arrangement in September 1996, stating that "we have both agreed that you can make the crystal angel as copyrighted by Mag Jewelry Co." At trial, Gregerman testified that he rejected his attorney's advice to pursue litigation at that time because he could continue

to use the four-stone angel design, and litigation would have upset his mother, who was elderly and ill.

Mag and Gregerman continued to make and sell crystal angels, co-existing without incident until Mag discovered the crystal angel necklaces sold by Target Corporation in late 2001. After purchasing some at the Target store in Warwick, Rhode Island in December 2001 and more at a Target store in New York the next month, Mag filed this copyright infringement action against the retailer.[4] Target later identified Style as its supplier, and Mag amended its complaint to add Style as a defendant, alleging that Style had sold crystal angel items that were copied from Mag's angel.

Style, however, was a customer of Gregerman. In its answers to Mag's interrogatories, the company denied that it had copied "any piece sold or created by Mag jewelry" and reported that it had "adapted a piece purchased from Alan Gregerman Co." to create the Target necklace. Style had purchased crystal angels from Gregerman between May 1997 and August 1998 and subsequently had similar pieces produced, at a lower cost, by two other companies. Style did not obtain Gregerman's permission to bring the design to other manufacturers.

---

[4] The lawsuit originally was filed in the Southern District of New York, but was transferred to Rhode Island in response to Target's motion.

Based on the uncontroverted evidence that Style's crystal angel was modeled on a design it obtained from Gregerman,[5] the defendants moved for summary judgment in July 2005. In support of their motion, they cited a June 2000 affidavit from Gregerman stating that he had independently created his crystal angel.[6] In opposition, Mag offered a new affidavit from Gregerman, taken on September 1, 2005, that included the following assertions:

> 5. Based on an agreement with Daniel Magnanimi, Alan Gregerman Company can make and sell the subject "Crystal Angel" jewelry piece.
>
> 6. I inform any potential customer interested in purchasing the subject "Crystal Angel" piece that it has been copyrighted by Mag Jewelry Co., Inc. and that Alan Gregerman Company has an agreement with Mag and can make and sell the piece to its customers.
>
> . . .
>
> 8. To the best of my recollection, I informed Chad Mollica of Style Accessories, Inc. of the fact that the subject "Crystal

---

[5] Mag does not concede that it was Gregerman's own design, but has not contested that Style gained access to the crystal angel through its dealings with Gregerman.

[6] That affidavit stated, in part:

Mag's principal, Daniel Magnanimi, . . . proposed an agreement whereby Mag would not interfere with my production and sale of my crystal angel if I permitted Mag to make and sell two other angel jewelry designs I had created and was then selling. Mr. Magnanimi sent me a letter in September, 1996 reflecting this arrangement. I continued selling my crystal angel and still sell that product to this day.

Angel" piece was copyrighted by Mag Jewelry Co.

Relying on the new affidavit, Mag argued during a hearing on the summary judgment motion that factual disputes remained, particularly "whether Mr. Gregerman independently created that piece" and, even if he did create a crystal angel, whether the angel Gregerman sold to Style was his own or the Mag design. Mag's counsel suggested that Gregerman was a licensee of Mag, and he told the court that, if the new affidavit is read "precisely[,] what it says is that he sold to Style the Mag angel. Assuming that there even is an angel that he still maintains that he independently created, that's not what he sold to Style."

At the end of the hearing, the district court denied the summary judgment motions, observing that "there are just too many factual links that have to be established here . . . for the Court to say as a matter of law that this is not an infringing product." The case thus proceeded to trial before a jury.

In preparation for trial and in response to Gregerman's second affidavit, defendants sought further discovery and obtained permission to depose him. At his February 2006 deposition, Gregerman testified that he originally refused to sign a new affidavit proposed to him by Mag's counsel because it stated that Alan Gregerman Company had a license from Mag – "and that was not the case." Gregerman agreed to the affidavit ultimately submitted to the court after it was revised to eliminate the license

reference. At the deposition, the following exchange took place between Gregerman and defense counsel:

> Q. You didn't understand that you had a license, correct?
> A. I did not have – as far as I was concerned, based upon my definition or my understanding of a license, I did not have a license from Danny.
> Q. You were selling your Crystal Angel in the Summer of 2005, correct?
> A. Correct.
> Q. And that was your creation that you were selling, correct?
> A. Correct.

At trial, Magnanimi testified about his creation of the crystal angel in 1992 and stated that the piece, which was first created as a pin, had been displayed at jewelry shows in Providence, Rhode Island between 1992 and 1994. The earliest evidence that Mag's crystal angel was distributed to others was an invoice showing that a sample piece was mailed to a company, Merlite Industries, in September 1994. Magnanimi testified that the first documented sale of a crystal angel item occurred in March 1995 and that more than 14,000 pins with that design were sold in the first half of 1995. At one point during cross-examination, when asked about his company's effort to secure an assignment from Gregerman of the copyright in his angel, Magnanimi stated that

> there was never a dispute as to whose crystal angel it was. Alan Gregerman claims that he independently designed it, and I claim that I independently designed it.
>   Whose crystal angel it was from 1995 and 1996 until this day me and Alan Gregerman

never discussed, didn't care whose crystal angel it was.

Gregerman, also called as a witness by Mag, described his own creation of a four-stone crystal angel in 1994 at a customer's request. On cross-examination, in response to a question by defense counsel, he agreed that he had "always considered that [he] independently created that angel," and further agreed that it was his own angel that he sold to Style. However, he also acknowledged that he told customers who purchased the crystal angel, including Style's president, Chad Mollica, that Mag Jewelry had a copyright on the design and that he and Magnanimi had "an understanding or agreement" that he could manufacture and sell the four-stone angel "without any legal repercussions." Upon questioning by Mag's counsel, Gregerman testified that the crystal angel design sold to Style was "the same crystal angel design" as Mag's and that, "[t]echnically," Gregerman had been selling "the crystal angel design that was copyrighted by Mag Jewelry."

At the close of Mag's presentation of its case-in-chief, the defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, arguing, inter alia, that Mag had failed to prove that Style copied the Mag crystal angel. In its oral ruling, the district court stated that the only reasonable conclusion that could be drawn from the evidence was that defendants had copied the angel they had obtained from Gregerman. The court explained:

> I don't see how there could be any contention here that the defendants copied Mag's crystal angel as opposed to Gregerman's, because they had ready access to Gregerman's, and there would be no reason for them having Gregerman's crystal angel and having a history of selling it why they would possibly go to take Mag's crystal angel.

The court then went on to consider the "fundamental question" – "whether Gregerman's crystal angel infringed on Mag's copyright." To establish copyright infringement, a plaintiff must prove two elements: (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005). The plaintiff bears the burden of proof on both elements. Johnson, 409 F.3d at 17. Mag's ownership of a valid copyright has not been contested; the focus in this case has been on the element of copying. Direct evidence of copying is rare, id. at 18; Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996), but an inference of copying may be drawn from evidence that an alleged copier had access to the copyright holder's previously created design and that there is a high degree of similarity between the works, Johnson, 409 F.3d at 18; Grubb, 88 F.3d at 3.[7]

---

[7] A copyright infringement claim may involve two different assessments of "similarity" – one to determine whether copying in fact occurred and the other to evaluate whether it amounted to infringement – and we have observed that confusion has arisen from the "dual use of the term 'substantially similar'" to refer to both issues, Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25,

-11-

Consistent with that framework, the district court noted that, for Mag to prevail, it would have to make two showings. First, Mag needed to demonstrate "a sufficient degree of similarity" between its crystal angel and Gregerman's "to give rise to an inference of actual copying." Johnson, 409 F.3d at 18. The court found that Mag's evidence supported such a finding. Second, Mag had to prove that the similarity in the designs was attributable to Gregerman's having had access to Mag's crystal angel rather than to Gregerman's independent creation of the same design. The district court concluded that Mag's evidence on this prong fell short, explaining that Mag's failure to elicit probative evidence of access precluded a jury from finding that the items sold and manufactured by the defendants were copied from Mag's

33 n.4 (1st Cir. 2001); see also Johnson, 409 F.3d at 18; Matthews v. Freedman, 157 F.3d 25, 27 n.1 (1st Cir. 1998) (noting the two uses of "[t]he substantial similarity rubric"). In Johnson, we used distinct language for each, stating that the fact of copying may be proven inferentially if there is "probative similarity" between the works at issue (accompanied by proof of access), i.e., "the two works are 'so similar that the court may infer that there was factual copying.'" 409 F.3d at 18 (quoting Lotus Dev. Corp. v. Borland Int'l, 49 F.3d 807, 813 (1st Cir. 1995)). Copying as a factual matter is insufficient to prove infringement, however, giving rise to the second similarity question: whether the copying was sufficiently extensive to render the two works "substantially similar," and therefore actionable. Secrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000). "Th[is] substantial similarity requirement focuses holistically on the works in question and entails proof that the copying was so extensive that it rendered the works so similar that the later work represented a wrongful appropriation of expression." Johnson, 409 F.3d at 18. Here, where the copyrighted work and the allegedly infringing item are essentially the same, the latter inquiry is unnecessary.

angel.[8]  The defendants were therefore entitled to judgment as a matter of law.

On appeal, Mag contends that the district court applied the wrong legal standard to the issue of access and further erred by failing to consider Style's access to the Mag design along with Gregerman's.  Mag also claims that the court improperly neglected a dispositive independent basis on which Mag could have prevailed before the jury – that Gregerman sold Mag's "crystal angel" design to Style, and not his own independent creation.

In a cross-appeal, defendants claim that the district court abused its discretion in rejecting their request for attorney's fees.

**II.**

The parties' contentions in this case are sufficiently unusual that we think it helpful to pause briefly for the purpose of clarifying the relationships among the central characters.  As noted above, it is undisputed that Gregerman was the original source of the crystal angel jewelry that Style distributed to Target.  Although Style directly purchased crystal angels from Gregerman for a little more than a year, it later hired other

---

[8] We note that, even if a plaintiff is able to show both access and substantial similarity, "the trier of fact may nonetheless find no copying if the defendant shows independent creation."  Grubb, 88 F.3d at 3; see also Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 606 n.6 (1st Cir. 1988).

-13-

companies to make similar items, but at a lower cost and without Gregerman's authorization.  The necklaces that Mag found at Target were produced by one or more of these other companies.

When Mag sued Target and Style for copyright infringement, Style defended in part by claiming that – if the crystal angel could be copyrighted[9] – Mag was not the copyright holder whose design had been infringed.  Style asserted that the crystal angel necklace sold at Target was based on Gregerman's independently created design and impliedly claimed that, if any infringement occurred, it was of <u>Gregerman</u>'s design, not Mag's.

Mag ultimately responded in two ways.  First, it maintained that Gregerman was not, in fact, an independent creator, and so "Gregerman's design" was in reality Mag's design.  Second, Mag argued that even assuming that Gregerman independently created an identical crystal angel, the angel design that Gregerman sold to Style was Mag's, and not his own.[10]  Under either theory, Mag would have a viable copyright claim against Style.

Gregerman is not a defendant in this case because he and Magnanimi agreed that both of their companies could make the angel – whether or not Gregerman was an independent creator – and

_____

[9] In its Answer, Style included as an affirmative defense that Mag's crystal angel "was not original, nor was it an independent creation."

[10] This latter argument is based on Mag's contention that, even if Gregerman conceived of the crystal angel independently, he intended to be selling <u>Mag</u>'s angel to his customers.

-14-

Gregerman also was free to sell the design to Style and his other customers. Thus, in selling the crystal angel to Style, Gregerman did no more than was authorized by the September 1996 letter agreement. Mag's claim is that Style committed copyright infringement when – without permission from either Mag or Gregerman – it took the design it had obtained from Gregerman to other companies for production of crystal angel jewelry.

Mag argues that we should reject out of hand what it characterizes as Style's unprecedented independent creation defense, i.e., that Style is protected by Gregerman's independent creation notwithstanding the fact it did not have Gregerman's permission to make the allegedly infringing items. While we can appreciate Mag's dismay, principles of copyright law on which Mag itself relies appear to permit just such a defense by Style. Mag acknowledges in its brief that it is "axiomatic" that separate copyrights exist in independently created designs, even if the works are identical. See Boisson v. Banian, Ltd., 273 F.3d 262, 270-71 (2d Cir. 2001); see also Melville B. Nimmer & David Nimmer, 1 Nimmer on Copyright § 2.01[A] (2007) ("[A] work is original and may command copyright protection, even if it is completely identical with a prior work, provided it was not copied from such prior work but is rather a product of the independent efforts of its author."). Presumably, then, if Gregerman independently created his design, and if Style copied the crystal angel from

-15-

Gregerman, only Gregerman's rights would be implicated. It would be up to Gregerman to pursue, or not, his rights in his design.[11]

The pivotal issues before us, therefore, are whether Mag provided sufficient evidence of copying by Gregerman to allow a jury to reject the claim of independent creation, and whether, even if Gregerman did independently conceive a crystal angel, the particular design taken without permission by Style was Mag's.

With this background in mind, we turn to our review of the district court's judgments.

**III.**

We review de novo the grant of a motion for judgment as a matter of law under Rule 50, viewing "'the evidence, and inferences to be drawn therefrom, in the light most favorable to the non-movant.'" Cardona-Martínez v. Rodríguez-Quiñones, 444 F.3d 25, 28 (1st Cir. 2006) (quoting Mangla v. Brown Univ., 135 F.3d 80, 82 (1st Cir. 1998)). Judgment as a matter of law is appropriate if the presentation of the party's case reveals no "legally sufficient evidentiary basis" for a reasonable jury to find for that party. Fed. R. Civ. P. 50(a)(1); see also id. at 28.

---

[11] At the hearing on defendants' motion for attorney's fees, the district court observed that "[o]ne of the many missing sets of facts here is why Mr. Gregerman hasn't sued the Defendants, but that's neither here nor there." Mag reported in its reply brief that shortly after judgment was granted for defendants in this case Gregerman did file his own action against Style. That litigation is obviously outside the scope of this case, and we take no view of its merits.

-16-

The district court concluded that defendants were entitled to judgment because, in its view, there was insufficient evidence to permit a jury to conclude that Style's crystal angel originated with Mag's copyrighted design. Specifically, the court ruled that there was no evidentiary basis for a finding that Gregerman had access to Mag's crystal angel before he made his own – and thus no basis for concluding that he copied the Mag angel.

Mag argues that the court erred in evaluating "access." It claims that copyright law requires only that a defendant had a "reasonable opportunity" to view the plaintiff's work and that the court erroneously utilized a more demanding standard. According to Mag, the court required it to prove that Gregerman actually took advantage of viewing opportunities and saw the work.

We find this argument unpersuasive. Mag is correct that "reasonable opportunity" is the applicable standard for evaluating access; a copyright owner need not demonstrate an alleged infringer's actual access to a protected work. See Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996). However, "[e]vidence that only creates a 'bare possibility' that the defendant had access is not sufficient." Id.; see also, e.g., Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988) (requiring evidence of "a reasonable possibility of access," which is "more than a bare possibility and may not be inferred through speculation or conjecture"); 4 Melville B. Nimmer & David Nimmer, Nimmer on

-17-

Copyright § 13.02[A] (2007) ("Of course, reasonable opportunity . . . does not encompass any bare possibility in the sense that anything is possible. Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing plaintiff's work – not a bare possibility.") (footnotes omitted).

Here, as the district court noted, there was no evidence that the Mag angel was widely distributed before Gregerman first produced large quantities of his crystal angel in late 1994.[12] A sample was provided to a customer, Merlite, in September 1994, but Mag recorded no sales until early the following year. Mag did not create its first catalog until December 1996. Although there was evidence that the crystal angel was displayed at jewelry shows between 1992 and 1994 – two each year in Rhode Island, where Gregerman lived[13] – the district court observed that "[t]he problem is that there is no evidence that Mr. Gregerman attended any of those shows, let alone that he went to Mag's display."

Mag complains that this statement of "[t]he problem" reflected the incorrect view that Mag had to show that Gregerman

_____

[12] The record included a receipt showing Gregerman's sale of thirty-six pairs of crystal angel earrings to Treasure Chest, Inc., in September 1994 and an additional twenty-four pairs to the same company in December 1994.

[13] Magnanimi's testimony indicates that items displayed in the shows, which took place on two weekends each year, remained in a permanent showroom that was open every Wednesday.

actually viewed the design at the shows, while the standard requires only an opportunity for viewing. However, the gap in evidence is larger than Mag admits. While evidence that Gregerman attended the Rhode Island jewelry shows – or, even more generally, that he sometimes attended similar shows – may have permitted an inference that he had a reasonable opportunity to view Mag's design, Mag failed to identify any such evidence. Notably, Gregerman was called as Mag's witness at trial, but was not asked about his attendance at trade shows.[14]

Mag asserts that a reasonable opportunity to view the copyrighted work can be shown through a "chain of events" or a "link" by which access might have occurred. It cites Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc., 730 F. Supp. 1165 (D. Mass. 1989), to support its contention that the annual display of Mag crystal angels at trade shows in Rhode Island, "in Mr. Gregerman's own locality," was sufficient to establish such a chain. Access was not disputed in Flag Fables, id. at 1171, 1178, but the judge briefly noted that the defendant could not credibly argue lack of access in part because plaintiff's decorative banners

_____

[14] Mag suggests in its briefs that the district court improperly relied on Gregerman's "uncorroborated denial of copying" in finding insufficient evidence of access, and asserts that Gregerman "never denied that he knew of the [Rhode Island jewelry show], or that he was for any reason unable to attend." However, Mag bore the burden to show copying, and the court reasonably could take into account its failure to establish Gregerman's history of attending the show – or any other affirmative evidence of access.

-19-

had been displayed at the same craft fairs where the defendant later sold her flags for more than a year before defendant began producing her own versions. In addition, the court relied on evidence that plaintiff's banners had achieved "rapid and widespread popularity," id. at 1171, and were the subject of a local newspaper article. No equivalent "chain of events" was shown here. No evidence placed either Gregerman or Style at the jewelry trade shows, and, as noted earlier, there is no evidence of widespread awareness of Mag's crystal angel before Gregerman began selling his jewelry.

Mag seeks to mitigate the absence of "'affirmative and probative evidence'" of access, Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (quoting Scott v. Paramount Pictures Corp., 449 F. Supp. 518, 520 (D.D.C. 1978), aff'd, 607 F.2d 494 (D.C. Cir. 1979) (table)), by pointing to the "striking similarity" between the Mag and Gregerman crystal angel pieces. Mag argues that numerous courts have held that such equivalence between works is itself independent evidence of access, see Bucklew v. Hawkins, Ash, Baptie & Co., 329 F.3d 923, 926 (7th Cir. 2003) (citing cases), and it suggests that other facts in the record also tend to rebut Gregerman's claim of independent creation. Mag notes Gregerman's failure to register the copyright in his four-stone angel, despite his registration of other contemporaneous designs; his failure to enforce his claimed rights in the crystal angel

-20-

design against infringers, despite enforcing his copyright in other contemporaneous works; and his issuance of a license to Mag to sell other of his designs, suggesting a quid pro quo for Mag's allowing him to sell its crystal angel.[15]

While the designs' similarity and these additional facts would have assisted Mag before the jury had it offered some probative evidence of access, any finding of copying by the jury based on Gregerman's failure to register copyrights in other designs or to enforce his rights in the crystal angel beyond his agreement with Magnanimi would be "mere speculation or conjecture."[16]  In addition, as the district court noted, the striking similarity between the designs "is a little less compelling in this case . . . because we're dealing with basically an arrangement of geometric shapes and we're dealing with a final creation that is sort of fixed in concept. . . . [T]here are only so many ways one can depict an angel."  In a case such as this,

---

[15] At oral argument, Mag emphasized this alleged quid pro quo and Gregerman's failure to register his four-stone angel as evidence that Gregerman did not in fact consider the crystal angel design to be his own.  Whatever weight may be attached to these facts is offset, however, by the evidence that Mag in 1997 asked Gregerman for an assignment of his copyright in the angel – suggesting that Mag believed Gregerman had a valid claim of independent creation.  Gregerman testified that he did not sign the document and has "[n]ever" wished to assign any rights in the crystal angel.

[16] Gregerman testified that he had submitted registrations for seven or eight copyrights out of the hundreds, possibly thousands, of designs that he created over twenty-five years, noting that he had begun registering more frequently than he had in the past.

where the simplicity of the design makes independent creation highly plausible, similarity alone could not establish access and, in turn, copying.[17]  Cf. Bucklew, 329 F.3d at 926 ("[W]hen the similarities concern details of such an arbitrary character that the probability that the infringer had duplicated them independently is remote, an inference of copying may be drawn without any additional evidence."); Gaste, 863 F.2d at 1068 ("Though striking similarity alone can raise an inference of copying, that inference must be reasonable in light of all the evidence."); Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984) ("[A]n inference of access may [] be established circumstantially by proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded. . . . [However], striking similarity is just one piece of circumstantial evidence tending to show access and must not be considered in isolation . . . .").

On this record, we agree with the district court that no reasonable finder of fact could conclude that Gregerman had a reasonable opportunity to view Mag's work before Gregerman produced his crystal angel.  Consequently, the court properly found as a

---

[17] Indeed, we previously have held that, even where two designs are very similar, proof of access remains necessary. See Grubb v. KMS Patriots, L.P., 88 F.3d 1, 5-6 (1st Cir. 1996).  We explained that "[t]he reason for both requirements is simple: copyright protection precludes only copying; if two people arrive at the same result independently, copyright law will not protect the first." Id. at 6.

matter of law that Mag could not establish that Style copied its crystal angel design by copying Gregerman's design.[18]

## IV.

Mag alternatively asserts that, even assuming that Gregerman independently conceived his crystal angel, Mag was entitled to prove to a jury that the angel Gregerman sold to Style was not his own creation, but Mag's design – meaning that when Style copied the design, it was copying from Mag, not Gregerman. Mag claims the district court erred in failing to consider this basis for the infringement claim.

We view this argument to be so implausible as to verge on frivolity. The record as a whole unequivocally refutes the theory that Gregerman sold his customers crystal angels that he considered to be based on Mag's copyrighted design, rather than on his own essentially identical concept. Gregerman consistently testified that he sold his own crystal angel design to his customers, specifically including Style.

---

[18] On the issue of access, Mag alternatively offers a cursory argument that Style's liability should be premised on its own access to Mag's crystal angel jewelry. Mag has never argued or presented evidence that Style was exposed to the crystal angel outside of its dealings with Gregerman; rather, it argues that Style gained access to Mag's design through those dealings. However, as we explain in Section IV, in light of Mag's failure to offer sufficient evidence of copying by Gregerman, a jury could not reasonably find that Gregerman provided Mag's design – rather than his own – to Style. Consequently, there is no basis for a finding that Style had access to Mag's design through Gregerman.

Mag's attempt to create a factual dispute by characterizing Magnanimi's letter to Gregerman in September 1996 as a license agreement is, at best, disingenuous. The letter, stating that "we have both agreed that you can make the crystal angel as copyrighted by Mag Jewelry Co.," provides no basis for an inference that from that time forward Gregerman was selling Mag's angel pursuant to a license rather than his own creation. Indeed, such a suggestion defies reason. Gregerman and Magnanimi both testified that the two angels were essentially the same.[19] Given the assumption of independent creation – and that is the starting

---

[19] At trial, Mag's counsel asked Gregerman if he had been selling "the crystal angel design that was copyrighted by Mag Jewelry." He replied, "Technically." Defense counsel immediately followed up, asking Gregerman if his crystal angel looked the same as the Mag crystal angel. He responded that "[i]t is the exact same expression."
Magnanimi testified similarly:

| | |
|---|---|
| Defense Counsel: | So as of June of 1997, you knew that Mr. Gregerman had the rights to his crystal angel, didn't you? |
| Magnanimi: | His crystal angel or my crystal angel? |
| Defense Counsel: | His crystal angel. |
| Magnanimi: | . . . [T]here was never a dispute as to whose crystal angel it was. Alan Gregerman claims that he independently designed it, and I claim that I independently designed it. |
| | Whose crystal angel it was from 1995 and 1996 until this day me and Alan Gregerman never discussed, didn't care whose crystal angel it was. |
| Defense Counsel: | Because it's the same angel, essentially, isn't it? |
| Magnanimi: | Absolutely. |

point for this alternative argument – whether the angel Gregerman sold to Style was his own design or Mag's depended entirely on Gregerman's representation. In either case, the jewelry would look the same. Thus, if Gregerman said he was selling his own angel – and he did so testify – a jury could find otherwise only if Gregerman's statements or behavior at the time of the sales contradicted that assertion.[20]

In attempting to show such inconsistency, Mag relies in part on the September 1996 letter. The letter contains only the single sentence concerning Gregerman's use of the Mag design: "Per our telephone conversation we have both agreed that you can make the crystal angel as copyrighted by Mag Jewelry Co." As we already have pointed out, this says nothing about which angel Gregerman actually would make and sell. As Magnanimi testified, neither he nor Gregerman was concerned about that question because both designs were, essentially, "the same angel." In other words, both men agreed that "the crystal angel as copyrighted by Mag Jewelry Co." was identical to the crystal angel that Gregerman claimed to have created.

---

[20] We acknowledge that this discussion is somewhat elusive in that we are attempting to ascertain the source of a piece of jewelry that would look the same regardless of its origin. However, given the uniformity in the designs, the critical fact in these circumstances is whom Gregerman identifies as the designer of the crystal angel jewelry he sold to Style.

Mag also highlights Gregerman's disclosure to his customers that Mag possessed a registered copyright on the crystal angel, as well as Gregerman's assurance that there would be no litigation over his customers' use of the crystal angel design – suggesting that these actions demonstrate that Gregerman was selling Mag's angel. Mag reads too much into these messages. Gregerman's decision to inform his customers that there was no risk of legal action stemming from their purchase of his angels, despite Mag's formal copyright protection, does not contradict his testimony that he sold Style his own angels.

Nor does the new Gregerman affidavit that was offered by Mag in its effort to stave off summary judgment fill the gap. Without doubt, the affidavit could be read out of context as stating that, in Gregerman's view, he was selling Mag's copyrighted angel. In it, Gregerman refers to the Mag design as "the subject 'Crystal Angel' jewelry piece" and states that the "Alan Gregerman Company sold the subject 'Crystal Angel' jewelry piece to Style Accessories, Inc." Once again, however, the fact that all parties saw Gregerman's angel as indistinguishable from Mag's provides necessary context. Gregerman's testimony unmistakably shows that it was the uniformity between the pieces that caused him to view

any sale of the former as "[t]echnically" also a sale of the latter.[21]

Mag asserts that sufficient ambiguity exists surrounding these various factors – the agreement, the verbal assurances to customers, the averments in the new affidavit – that it was entitled to a jury judgment on the credibility of Gregerman's assertion that he sold his own angel design to Style. We disagree. To the extent any of these indicators is equivocal in isolation, the uncertainty is dispelled when the record is considered as a whole. On this record, a jury could find for Mag only by engaging in conjecture or speculation, and defendants' Rule 50 motion may not be denied on such a basis. See Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006) ("Even though we draw all rational inferences from the facts in favor of the non-moving party, that party 'is not entitled to inferences based on speculation and conjecture.'") (quoting Ferrer v. Zayas, 914 F.2d 309, 311 (1st Cir. 1990)); Russo v. Baxter Healthcare Corp., 140 F.3d 6, 8 (1st Cir. 1998) (stating that non-moving party may not rely on

---

[21] Mag attempts to discredit as self-interested – and thus not credible – Gregerman's testimony that he sold Style his own angel design because such testimony protects Gregerman's ability to pursue his own infringement suit against Style. However, if that were Gregerman's motivation, he would have responded negatively when asked whether he sold Mag's design to Style. His answer – "technically" – was unnecessarily precise, confirming that the only reasonable interpretation of his statements and behavior is that, in his view, he was selling Style his own creation and not Mag's.

conjecture or speculation to justify submitting an issue to the jury).

In sum, we conclude that a reasonable jury could not have found that Gregerman sold Mag's angel rather than his own to Style. We therefore affirm the district court's grant of defendants' motion for judgment under Rule 50.

**V.**

Under section 505 of the Copyright Act, the district court "in its discretion" may award a "reasonable attorney's fee" to the prevailing party. 17 U.S.C. § 505. Such fees are to be awarded to defendants on an "evenhanded" basis with plaintiffs. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994); see also InvesSys, Inc. v. McGraw-Hill Cos., 369 F.3d 16, 19 (1st Cir. 2004). Among the factors that may be considered are "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Fogerty, 510 U.S. at 534 n.19 (quoting Lieb v. Topstone Indus., 788 F.2d 151, 156 (3d Cir. 1986)). The goal of such awards is to "vindicat[e] the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good." Lotus Dev. Corp. v. Borland Int'l, Inc., 140 F.3d 70, 73 (1st Cir. 1998); see also Fogerty, 510 U.S. at 524.

-28-

Defendants challenge the district court's refusal to make a fee award in this case, arguing that the court overemphasized Mag's subjective good faith and improperly failed to take into account both the weak factual basis for Mag's position and Mag's misleading representations at the summary judgment hearing concerning whether Gregerman sold Style his own, or Mag's, crystal angel design. Although we may not disturb the trial court's judgment simply because we would have approached the matter differently, the court's misapprehension of either the law or the facts may justify vacating its ruling as an abuse of discretion. See InvesSys, 369 F.3d at 19; Lotus Dev. Corp., 140 F.3d at 75; Edwards v. Red Farm Studio Co., 109 F.3d 80, 82-83 (1st Cir. 1997).

Having closely reviewed the record, we agree with defendants that in rejecting a fee award, the district court relied on a mistaken notion of the factual reasonableness of Mag's infringement claim. During the hearing on defendants' fees motion, the court noted that it was undisputed that Style had copied an angel obtained from Gregerman and that the issue thus became "whether Gregerman was producing this crystal angel simply as a licensee of Mag pursuant to Mag's copyright." The court observed that, despite its finding that Mag presented insufficient evidence of access to warrant an inference of copying, that evidentiary failure did not necessarily lead to an award of attorney's fees. The court thought it significant that "the issue of Mr. Gregerman's

access to Mag's crystal angel didn't really surface[,] . . . didn't become a big issue until the time of trial."  The court stated:

> It might have been a different matter if this were an issue that was fully explored prior to trial, but that wasn't the case. This issue, although [it] may have been touched on somewhat collaterally, didn't really emerge as the focal point in the case until the time of trial.  At least that was my recollection.

The court went on to identify as the other "significant" point the "agreement, whether you call it a licensing agreement or however one characterizes it, there was an agreement between Mag and Gregerman under which they agreed to sell each other's crystal angel."  The court found "very troubling" the alleged misrepresentations by Mag concerning the Gregerman affidavit at the summary judgment hearing,[22] but said that "I certainly can't conclude based on what's been presented to me that . . . there was any attempt to mislead the Court as to what Gregerman's position was in this."

_____

[22] At that hearing, the court pressed Mag's counsel on whether Gregerman's two affidavits "really clash with one another" so as to create a factual dispute requiring trial.  Counsel told the court that the disputed question was whether Gregerman had independently created the crystal angel; he reported that, in the second affidavit, Gregerman was moving away from his earlier independent creation position and "is saying . . . that there is a Mag piece that is covered by the Mag copyright, and that is what he sold to Style."  Counsel further suggested that Gregerman asserted that his sales of the Mag angel were pursuant to a licensing agreement. However, Gregerman's testimony at trial was that he refused to sign the affidavit until the language referring to a license was removed.

We think the court misunderstood the extent and significance of Mag's shift in its theory of the case to avoid summary judgment and, indeed, the comments quoted above indicate that the court may have decided differently had it fully appreciated Mag's strategy. At the outset of the litigation, Mag was pursuing Style as an infringer of its crystal angel. Once it discovered that Style's angel originated with Gregerman, the infringement claim as originally conceived was no longer viable. At that point, Mag could show copyright infringement only if it could prove either that Gregerman's "independent" design had in fact been copied from Mag's, or that Gregerman had sold Mag's angel, rather than his own, to Style.

Our analyses in the preceding sections explain why neither of those positions was vindicated at trial, and we think it apparent that the inadequacies in Mag's showings are traceable to facts of which the company had full knowledge at the time of summary judgment: that Gregerman had consistently maintained that (1) he independently created his crystal angel, and (2) the angel he sold to Style was his own (though identical to Mag's). Mag offered no meaningful contrary evidence at trial.

At both the summary judgment and fees hearings, Mag's counsel muddied the district court's understanding of the facts by describing the September 1996 letter from Magnanimi to Gregerman as a licensing agreement and asserting that Gregerman had agreed to

sell Mag's angel. There is no evidence that Gregerman agreed to sell Mag's angel rather than his own, and counsel's assertion at the fees hearing that Gregerman "testified that he sold the Mag piece" to Style is – as we have explained – based on statements taken out of context. Mag's counsel skillfully prepared the 2005 Gregerman affidavit to create that same ambiguity about Gregerman's sales to Style, despite the company's awareness that Gregerman at all times insisted that he sold only his own design.

Mag may well have revealed its hand in this litigation when its counsel noted, at the outset of his argument in opposition to the fee request, that "[t]he Court should not reward the Defendants for their admitted actions of copying a copyrighted piece." Counsel continued: "Maybe it was Mr. Gregerman['s] as they contend or Mr. Magnanimi's [as] we contend, but they copied a copyrighted work without authorization, and they should at the very least not be rewarded for that with an award of attorneys' fees." Beyond the equities, Mag argued that an award of fees would be inappropriate because the issues were novel and complex, involving the odd circumstance of a defendant without authorization from either of two claimed copyright holders defending against an infringement claim by asserting that its work originated from the second holder, not the plaintiff. See, e.g., Lotus Dev. Corp., 140 F.3d at 72 (affirming denial of fees where case involved "a novel and unsettled question of copyright law"); id. at 75 ("When close

-32-

infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries.").

We cannot agree with Mag's view that an award of fees in this case would be improper on the ground that defendants violated Gregerman's copyright, even if not Mag's. As the district court recognized, Gregerman's possible case against the defendants is not relevant, and we have no occasion to speculate on the propriety of Style's conduct vis-à-vis Gregerman. Nor does this case implicate a novel or complex issue of copyright law. Although the facts underlying Style's defense may be unusual, the legal principle at the core of their argument is, as noted earlier, well established: separate copyrights exist in each of two identical works that are independently created.

Mag must have known early on that its infringement claim was tenuous, yet it managed to prolong the litigation by obscuring the clarity of the underlying facts – a strategy that undoubtedly accounts for the district court's imperfect recollection of the case. Even if Mag was motivated by a good faith belief that Style was an infringer, its pursuit of these defendants became indefensible once it learned that Style obtained the design from Gregerman. In these circumstances, we think the district court's refusal to award fees may fairly be deemed an abuse of discretion. See InvesSys, 369 F.3d at 20 ("[I]n section 505 Congress aimed to provide a potential incentive to the winner who asserts a

successful copyright claim or defends against an unworthy one.");
Matthews v. Freedman, 157 F.3d 25, 29 (1st Cir. 1998) ("A
plaintiff's decision to bring a weak, if nonfrivolous, case and to
argue for an unreasonable extension of copyright protection are
relevant concerns."); Edwards, 109 F.3d at 82-83 (reversing
district court's denial of fees where plaintiff's action was
"highly unreasonable, if not frivolous" because she relied on
ambiguities she created); cf. Fogerty, 510 U.S. at 527
("[D]efendants who seek to advance a variety of meritorious
copyright defenses should be encouraged to litigate them to the
same extent that plaintiffs are encouraged to litigate meritorious
claims of infringement.").[23]  We leave to the district court's
discretion on remand the appropriate amount of the fee.

**In Appeal No. 06-1556, the judgment of the district court
is affirmed.  In Appeal No. 06-2127, the judgment of the district
court is reversed, and the case is remanded for further proceedings
consistent with this opinion.**

---

[23] Our conclusion that fees are warranted based on the case litigated against Style and Target makes it unnecessary to consider the separate arguments raised on behalf of Cherokee, Inc., and Robert Margolis.  We note, however, that the claims against Cherokee and Margolis appear to be even more patently unreasonable.