# United States Court of Appeals
## For the First Circuit

No. 10-2393

JASON SPOONER,

Plaintiff, Appellee,

v.

EEN, INC. AND DAN EGAN,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Robert Edmond Mittel, with whom MittelAsen, LLC was on brief, for appellants.
Adam S. Taylor, with whom André G. Duchette and Taylor, McCormack & Frame, LLC were on brief, for appellee.

July 5, 2011

**SELYA**, **Circuit Judge**.  After prevailing at trial in this copyright infringement case, the plaintiff sought and recovered substantial attorneys' fees.  The defendants contest the fee award. Concluding that the district court acted within the realm of its discretion, we affirm.

## I.  BACKGROUND

The relevant facts are easily catalogued.  On August 8, 2008, plaintiff-appellee Jason Spooner filed a complaint in the district court alleging that a gaggle of defendants — Dan Egan, EEN, Inc. (Egan's media production company),[1] the Sugarloaf/USA ski resort, and its hierarchs — had engaged in "blatant and unauthorized use" of the plaintiff's protected musical composition, in violation of the Copyright Act, 17 U.S.C. § 106.  The "use" occurred when EEN included a song composed, copyrighted, and performed by the plaintiff in a commercial advertisement prepared for television and internet display on behalf of Sugarloaf.  The plaintiff had not authorized this use.

Dismayed by the infringement of his copyright, he sought an injunction, statutory damages, and costs (including attorneys' fees) under the Copyright Act.  What followed was the litigation equivalent of hand-to-hand combat.

---

[1] The original complaint erroneously named a predecessor entity, but the plaintiff corrected the bevue early in the litigation.  For ease in reference, we use the shorthand "EEN" throughout this opinion.

It would serve no useful purpose to recite book and verse. It suffices to say that the parties engaged in frenetic motions practice, conducted extensive discovery, and squabbled over a plethora of issues (large and small). During this pretrial period, the protagonists struggled to reach a global settlement. That effort proved unavailing but, in October of 2008, the plaintiff settled with the Sugarloaf defendants for $30,000, dismissing the claims against those parties. See Fed. R. Civ. P. 41(a)(1)(A)(ii). Shortly thereafter, Egan and EEN (hereinafter, the defendants) made a $10,000 offer of judgment under Federal Rule of Civil Procedure 68. This offer encompassed both damages and costs (including attorneys' fees). The plaintiff rejected it.

At a meeting held on November 17, 2008, the defendants offered the sum of $20,000 in full settlement. This second offer, which was not tendered under the aegis of Rule 68, went unrequited.

After settlement negotiations fizzled, the case was tried to the court. The plaintiff prevailed: the court found that the defendants had willfully infringed the protected work and that Egan had failed to act celeritously in response to the plaintiff's request to retire the Sugarloaf commercial. Spooner v. EEN, Inc. (Spooner I), No. 2:08-cv-00262, 2010 WL 1930239, at *7-8 (D. Me. May 11, 2010). Accordingly, the court granted the plaintiff both injunctive relief and statutory damages in the amount of $40,000. Id. at *8-9. Because all of the parties originally sued were

-3-

jointly and severally liable for the statutory damages, the court set off the amount paid in the Sugarloaf settlement, leaving the plaintiff with a net additional recovery of $10,000 in statutory damages. Id. at *9. Finally, the court determined that the plaintiff should recover attorneys' fees pursuant to 17 U.S.C. § 505. Id. at *10.

A satellite proceeding ensued. After reviewing the plaintiff's request and the defendants' opposition, the court awarded the plaintiff fees of $98,745.80. Spooner v. EEN, Inc. (Spooner II), No. 2:08-cv-00262, 2010 WL 4286358, at *5 (D. Me. Oct. 28, 2010). The plaintiff's request for costs (other than attorneys' fees) was denied without prejudice. See id.

The plaintiff filed an amended request for costs (other than attorneys' fees). That matter was still unresolved when the defendants appealed from the order awarding attorneys' fees.

## II. ANALYSIS

We review a district court's award of attorneys' fees for abuse of discretion. Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011). Under this rubric, "we will set aside a fee award only if it clearly appears that the trial court ignored a factor deserving significant weight, relied upon an improper factor, or evaluated all the proper factors (and no improper ones), but made a serious mistake in weighing them." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292-93 (1st Cir. 2001); see

-4-

Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers, ___ F.3d ___, ___ (1st Cir. 2011) [No. 10-1780, slip op. at 6]. In all events, a material error of law constitutes an abuse of discretion. Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008).

In the American justice system, the parties customarily bear the responsibility for paying their own lawyers. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). But this general rule, like virtually every general rule, admits of exceptions. The Copyright Act creates such an exception: it authorizes a district court "in its discretion" to "award a reasonable attorney's fee to the prevailing party" in a copyright action.[2] 17 U.S.C. § 505; see Fogerty v. Fantasy, Inc., 510 U.S. 517, 533-34 (1994). A "prevailing party" is one who "has prevailed on the merits of at least some of his claims." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001) (quoting Hanrahan v. Hampton, 446 U.S. 754, 758 (1980) (per curiam)). This definition applies in the precincts

---

[2] In considering whether to exercise its discretion to grant attorneys' fees to a prevailing party under the Copyright Act, a court may consider a wide swath of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need . . . to advance considerations of compensation and deterrence." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994) (quoting Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)).

patrolled by section 505.  See Torres-Negrón v. J&N Records, LLC, 504 F.3d 151, 164 & n.9 (1st Cir. 2007).

The defendants acknowledge (as they must) that the plaintiff is a prevailing party.  They nonetheless challenge the fee award for two reasons.  First, they argue that the plaintiff's fee request was so excessive that the district court ought not to have awarded any fees at all.  Second, they argue that, even if an award was warranted, the court should have limited it to work performed prior to November 17, 2008 (the date on which the plaintiff rejected the defendants' $20,000 settlement offer). After pausing to clear away a jurisdictional obstacle, we discuss these claims sequentially.

## A.  The Jurisdictional Obstacle.

There is a jurisdictional question in this case. Although the defendants' notice of appeal was directed exclusively at the order granting an award of attorneys' fees, the plaintiff's request for other costs remained pending in the district court.  As a general rule, a post-verdict fee award is treated as distinct from an award of costs and, therefore, the fee award may be appealed even if the question of costs is unresolved.  See Fed. R. Civ. P. 54(d); see also Marek v. Chesny, 473 U.S. 1, 8 (1985).

Copyright cases, however, require the use of a different template.  The Copyright Act authorizes a court to "award a reasonable attorney's fee to the prevailing party as part of the

-6-

costs." 17 U.S.C. § 505 (emphasis supplied). When a statute specifies that attorneys' fees are a part of costs in a particular class of cases, an inquiring court must honor that directive. See Marek, 473 U.S. at 9. This taxonomy has practical consequences, one of which is that as long as the overall question of costs remains unresolved, an award of attorneys' fees — itself a component of the total recoverable costs — does not constitute a final and appealable order. See 28 U.S.C. § 1291; see also García-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 18 (1st Cir. 2005) (explaining, in case where district court denied section 505 request for fees without prejudice, that an initial order granting plaintiff a specific period within which to refile is typically not considered final).

A court is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte. McCulloch v. Vélez, 364 F.3d 1, 5 (1st Cir. 2004). Thus, even though the parties had not questioned appellate jurisdiction, we raised the point at oral argument.

Jurisdictional defects sometimes can be remedied by corrective measures even after an appeal is filed. See Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (en banc) (explaining that parties cured initial jurisdictional defect caused by lack of final judgment by stipulating to entry of judgment on all claims that remained open in the district court); see also Grupo Dataflux

v. Atlas Global Grp., 541 U.S. 567, 573 (2004). Mindful of this possibility, we informally stayed the proceedings while the parties attended to this jurisdictional defect. In rapid sequence, the parties stipulated to the amount of the recoverable costs (other than attorneys' fees), the district court entered an appropriate order (taxing those costs against the defendants in the amount of $3,413.05), and the clerk of the district court certified that result to us. This corrective action left nothing open in the district court. Consequently, it cured the jurisdictional defect and rendered the fee award final and appealable.

## B. **The Fee Request**.

The defendants' principal claim is that the plaintiff's request for fees reflects such a degree of extravagance that the only appropriate response to it was an outright denial of any fees. To put this claim into perspective, we first describe the conventional framework that courts use in fashioning fee awards: the lodestar method.[3] See, e.g., Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010); Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 1992). This approach requires the district court to ascertain the number of hours productively expended and multiply that time by reasonable hourly rates. Hensley v. Eckerhart, 461

---

[3] The lodestar method is the gold standard for calculating fee awards under a broad array of federal fee-shifting statutes. The case law under these statutes is, insofar as it pertains to constructing and applying the lodestar, generally interchangeable. See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983).

U.S. 424, 433 (1983); <u>Gay Officers Action League</u>, 247 F.3d at 295. The obligation to support both the time and rate components rests with the party seeking the award, <u>Hensley</u>, 461 U.S. at 433, but the opposing party may proffer countervailing evidence, <u>see</u> <u>Foley</u> v. <u>City of Lowell</u>, 948 F.2d 10, 20-21 (1st Cir. 1991). Appropriate supporting documentation includes counsel's contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel. <u>Gay Officers Action League</u>, 247 F.3d at 295-96; <u>see</u> <u>United States</u> v. <u>One Star Class Sloop Sailboat</u>, 546 F.3d 26, 40 (1st Cir. 2008).

Once the parties have made their submissions, the court determines how much compensable time counsel spent on the case, deleting any "duplicative, unproductive, or excessive hours." <u>Gay Officers Action League</u>, 247 F.3d at 295. The court then applies prevailing rates in the community to arrive at the lodestar. <u>Id.</u> Although the lodestar amount "represents a presumptively reasonable fee," <u>Lipsett</u>, 975 F.2d at 937, the court may adjust it up or down for other factors, say, a significant gap between the relief requested and the result obtained. <u>See</u>, <u>e.g.</u>, <u>De Jesús Nazario</u> v. <u>Morris Rodríguez</u>, 554 F.3d 196, 207 (1st Cir. 2009).

In this instance, the district court faithfully followed the lodestar method. The plaintiff requested fees totaling $175,714.30. The court noted the defendants' argument that this

request was so exorbitant that it warranted an outright denial of fees, Spooner II, 2010 WL 4286358, at *2, but chose not to go down that road. Instead, it undertook a methodical appraisal of the fee request.

The court observed approvingly that the plaintiff had pared down his fee request before filing it, writing off more than 100 hours. Id. at *3. It trimmed the request even further, winnowing out hours that it deemed "readily attributable" to the plaintiff's claims against the Sugarloaf defendants. Id. Similarly, it deleted hours relating to the plaintiff's quixotic endeavor to secure a pretrial attachment of Egan's property. Id. It then adjusted the time spent to reflect the plaintiff's unsuccessful attempt to split his infringement claim into two pieces (one relating to composition and the other to recording), deducting time attributable to that failed initiative. Id. at *4.

With respect to rates, the court reported that the defendants had offered nothing to show that the rates proposed by the plaintiff were unreasonable. Id. at *3. Noting that these rates were lower than those awarded for work done by the same lawyers in a recent case in the District of Maine, the court pronounced them reasonable. Id. It proceeded to multiply the reduced hours by the approved rates to fashion the lodestar — $98,745.80. Id. at *4.

The court freely acknowledged that this dollar figure far exceeded both the statutory damages that the plaintiff had recovered ($40,000) and the lesser amount that he stood to collect after setting off the Sugarloaf settlement ($10,000). Id. at *4 & n.5. But the court explained that the defendants had willfully infringed the plaintiff's copyright and, moreover, that the plaintiff had secured a permanent injunction, which "may have more value . . . than the statutory damage award." Id. at *4. Discerning no reason to make further adjustments to the lodestar, the court awarded the plaintiff attorneys' fees of $98,745.80. Id. at *5.

Against this backdrop, we turn to the defendants' plaint that the amount of the fee request was so excessive that the court should have refused to award any fees at all.[4] It is obvious that the amount of fees requested by the plaintiff is quite large in relation to the statutory damages recovered (whether those damages are viewed before or after the Sugarloaf set-off). The law, however, does not demand strict proportionality between fees and damages. See City of Riverside v. Rivera, 477 U.S. 561, 574 (1986) (plurality op.); cf. Hensley, 461 U.S. at 436 (explaining that "[t]here is no precise rule or formula" for calculating the impact

_____

[4] The defendants' complaint about excessiveness compares the amount of the plaintiff's request for fees to the amount of damages recovered. See Appellants' Br. at 7, 10. The defendants do not claim a fatal imbalance between the amount of fees requested and the amount awarded by the district court.

-11-

of plaintiff's degree of success on the amount of a reasonable fee award).

This rule makes eminently good sense: a strict proportionality requirement would overlook entirely the value of other important litigation goals. That kind of rigidity would frustrate the core purpose that underlies many fee-shifting statutes, which are designed to afford private parties the opportunity to vindicate rights that serve some broad public good. See City of Riverside, 477 U.S. at 578. Copyright cases are a prime example of a situation in which obtaining non-monetary relief or establishing a principle may be worth considerably more than the damages recovered.

The defendants assert that this case does not involve any issues of significant societal importance. That assertion rings hollow. Attorneys' fees are made available to prevailing parties in copyright cases in order to "vindicat[e] the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good." Mag Jewelry Co. v. Cherokee, Inc., 496 F.3d 108, 122 (1st Cir. 2007) (alteration in original) (quoting Lotus Dev. Corp. v. Borland Int'l, Inc., 140 F.3d 70, 73 (1st Cir. 1998)). The plaintiff's suit serves precisely this purpose.

We do not mean to imply that, once a party prevails in a case that falls within the compass of a federal fee-shifting

-12-

statute, the sky is the limit with respect to a request for attorneys' fees. If the requested fees are gluttonously high, a court has discretion to deny fees entirely. See First State Ins. Grp. v. Nationwide Mut. Ins. Co., 402 F.3d 43, 44 (1st Cir. 2005) (per curiam); Fair Hous. Council of Greater Wash. v. Landow, 999 F.2d 92, 96 (4th Cir. 1993); Lewis v. Kendrick, 944 F.2d 949, 958 (1st Cir. 1991). That is especially true in a copyright infringement action, where winning in itself does not automatically entitle the prevailing party to an award of attorneys' fees. See, e.g., Fogerty, 510 U.S. at 534; see also note 1, supra.

Be that as it may, denying fees altogether because of an overly ambitious fee request is a drastic step. Such a step is powerful medicine, to be administered sparingly and in only the most egregious cases. See Lewis, 944 F.2d at 958. Should a court find that a fee request has been outrageously inflated or that an attorney is logging unnecessary hours in order to capitalize on prevailing party status, it might well consider such a step. But more often, a court that is faced with a fee request that seems inordinately high can do justice between the parties by the simple expedient of shrinking the request down to an appropriate size. See Foley, 948 F.2d at 19-20 ("Often, when the amount sought is large but the actual recovery is small, fees may be reduced somewhat.").

Of course, the trial court is in the best position to gauge the bona fides of a request for fees. Where, as here, the trial court makes manifest that it understands the extent of its discretion, yet decides not to deny attorneys' fees completely to a prevailing plaintiff on the basis of an excessive request, it is hard to imagine that an appellate court will interfere. Cf. Latin Am. Music, ___ F.3d at ___ [slip op. at 6] (noting the exceptional degree of deference that courts of appeals afford district courts' determinations vis-à-vis fee awards in copyright cases); Lipsett, 975 F.2d at 937 (similar).

The facts of this case do not remotely suggest a need for us to usurp the district court's province. After all, the plaintiff voluntarily surrendered some hours before submitting his fee request, and the district court had no apparent difficulty in separating wheat from chaff with respect to the remainder. The court skillfully adjusted the number of hours downward and carefully explained its reasoning for each reduction. As to the time allowed, the defendants have not shown (indeed, they have made no effort to show) that any particular hours were improvidently included. By the same token, they have not shown (indeed, they have made no effort to show) that the rates requested were esurient. These failures are a testament to the fairness of the district court's tamisage. See Hutchinson, 636 F.3d at 14-15 (remarking that defendants' failure to submit evidence opposing fee

request undercut their argument that the district court abused its discretion in awarding plaintiffs the full amount sought). And, finally, the amount of fees requested does not seem grossly disproportionate to the intrinsic value of the relief obtained.

The short of it is that the district court determined, at least implicitly, that the plaintiff's request for fees, though high, was not so outrageous as to call for a total denial. The defendants have not come within a country mile of showing that this determination constituted an abuse of discretion. The defendants' first claim of error is, therefore, unavailing.

### C. **The Settlement Offer**.

The defendants next argue that even if the plaintiff was entitled to a fee award, the district court should have limited that award to work performed prior to November 17, 2008 (when the plaintiff rejected the defendants' $20,000 settlement offer). In support, the defendants cite French v. Corporate Receivables, Inc., 489 F.3d 402 (1st Cir. 2007). Their reliance on French is misplaced.

French involved a denial of fees to plaintiffs who had achieved limited success following their rejection of a more munificent offer. Id. at 404. In that case, however, the rejected settlement was in the form of an offer of judgment pursuant to Rule 68. Id. at 403. There is a significant difference between the consequences of rejecting a Rule 68 offer of judgment and the

-15-

consequences of rejecting a garden-variety settlement offer. We explain briefly.

"The plain purpose of Rule 68 is to encourage settlement and avoid litigation." Marek, 473 U.S. at 5. As a means to accomplishing this purpose, Rule 68 lays out specific procedures that make offers of judgment thereunder unique. The rule "allows a defendant to make a firm, non-negotiable offer of judgment," which includes costs accrued to that point, leaving the plaintiff two options: either accept or reject the offer within a set period. Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc., 298 F.3d 1238, 1240 (11th Cir. 2002); see Fed. R. Civ. P. 68(a). If the plaintiff does neither, the offer is deemed to be withdrawn. Fed. R. Civ. P. 68(b). A rejected Rule 68 offer, not improved upon at trial, obligates the plaintiff to pay the defense costs incurred subsequent to the rejection. Fed. R. Civ. P. 68(d). In that situation, the plaintiff cannot reasonably expect to recover his own subsequently incurred fees.

Rule 68, however, is sui generis. A garden-variety settlement offer made without resort to Rule 68 affords the offeror no similar protection; he cannot reasonably expect to gain the benefits that Rule 68 confers. See Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 341 & n.8 (1st Cir. 1997).

-16-

The $20,000 offer on which the defendants rely was not made pursuant to Rule 68.[5] Given that missing link, the defendants' claim of error collapses. It is only a Rule 68 offer of judgment, more generous than the judgment ultimately secured, that operates to cut off a plaintiff's entitlement to fees. See French, 489 F.3d at 403-04; Coutin, 124 F.3d at 341.

## III. CONCLUSION

We need go no further.[6] For aught that appears, the district court thoughtfully considered the question of fees, faithfully applied the lodestar method, and gave a plausible rationale for the amount of the award. The defendants have not challenged the reasonableness of either the hours allowed or the rates applied. Instead, they have staked their appeal on two claims of error, which (as we explained above) are meritless.

**Affirmed**.

---

[5] The defendants did make an earlier offer of judgment under Rule 68, but that offer was in the amount of $10,000. The defendants do not assert that the plaintiff's rejection of that earlier offer operated to cut off his entitlement to fees.

[6] In his brief, the plaintiff asks that we award him fees on appeal. An application for an award of fees on appeal should be filed as a separate motion within 30 days of the entry of final judgment in this court. See 1st Cir. R. 39.1. If the plaintiff wishes to pursue his quest for fees on appeal, he must follow that procedure.